No. 105,351

STATE OF KANSAS, *Appellee*, v. ZACHARY TOAHTY-HARVEY,
*Appellant*.
(298 P.3d 338)

Opinion filed April 12, 2013.

*Lydia Krebs*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Patrick J. Hurley*, assistant district attorney, *Jessica Dotter*, legal intern, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Zachary C. Toahty-Harvey appeals from the portion of his sentence for aggravated indecent liberties with a child that imposed lifetime postrelease supervision. He contends that lifetime postrelease supervision is durationally disproportional and, therefore, it violates § 9 of the Kansas Constitution Bill of Rights. We reject Toahty-Harvey's arguments, concluding that the sentence in this case is not unconstitutionally disproportionate to the nature of the case and the character of the offender; that it is not unconstitutionally disproportionate to the sentences imposed for other crimes in Kansas; and that it is not unconstitutionally disproportionate to the punishments imposed in other jurisdictions for the same offense. Consequently, we affirm the sentence.

## FACTUAL AND PROCEDURAL OVERVIEW

Toahty-Harvey pled nolo contendere (no contest) to one count of aggravated indecent liberties with a child, and the State offered the following factual basis at the plea hearing. In August 2009, 26-year-old Toahty-Harvey was a houseguest of the 12-year-old victim's family. Early one morning, he entered the victim's bedroom while she was sleeping and placed his hand in the area of her genitalia, making skin-to-skin contact. Based on the State's factual

proffer and on a finding that the defendant's plea was knowingly and voluntarily made, the district court found Toahty-Harvey guilty.

The default sentence for the off-grid version of aggravated indecent liberties under these circumstances is a life sentence with a mandatory minimum term of 25 years. See K.S.A. 21-4643(a)(1)(C); K.S.A. 21-3504(a)(3)(A) and (c). But in return for defendant's plea, the State agreed to join in recommending that the district court depart downward to a grid sentence of 60 months. Toahty-Harvey filed a motion for departure, as well as a motion to declare Jessica's Law, K.S.A. 21-4643, unconstitutional. At sentencing, the district court granted the departure to a 60 months' prison term but stated that defendant would be subject to lifetime parole with electronic monitoring. The parties suggested to the court that the proper postincarceration supervision after a departure to the guidelines grid is postrelease supervision, rather than parole. The court took that matter under advisement.

At a subsequent hearing, the district court agreed that, after the departure, Toahty-Harvey was subject to lifetime postrelease supervision, rather than lifetime parole with electronic monitoring. Toahty-Harvey then conceded that his motion to find Jessica's Law unconstitutional with respect to his period of imprisonment was moot because of the durational departure, but he asserted that the lifetime postrelease supervision was unconstitutional. The district court proceeded to hear arguments from the defendant on that issue. The prosecutor's response was that "the State does not wish to be heard on this issue."

Applying the factors or techniques from *State v. Freeman*, 223 Kan. 362, 574 P.2d 950 (1978), the district court determined that lifetime postrelease supervision in this case was not unconstitutionally disproportionate, in violation of § 9 of the Kansas Constitution Bill of Rights. Toahty-Harvey appealed on that sole issue. The State challenges our jurisdiction to consider the appeal.

## JURISDICTION

As a threshold matter, the State directs our attention to K.S.A. 21-4721(c), which provides that an "appellate court shall not re-

view: . . . (2) any sentence resulting from an agreement between the state and the defendant which the sentencing court approves on the record." The State argues that the parties jointly requested a departure sentence to 60 months, which the district court accepted, so that we are statutorily denied jurisdiction to review Toahty-Harvey's sentence challenge. *Cf. State v. Johnson*, 286 Kan. 824, 851-52, 190 P.3d 207 (2008) (K.S.A. 21-4721[c][1] deprives appellate court of jurisdiction to consider defendant's challenge to a presumptive gridbox sentence).

### Standard of Review

Jurisdiction is a question of law over which we have unlimited review. *State v. Ellmaker*, 289 Kan. 1132, 1147, 221 P.3d 1105 (2009), *cert. denied* 130 S. Ct. 3410 (2010).

### Analysis

In connection with the plea in this case, a document entitled Tender of Plea of No Contest was executed by Toahty-Harvey and his attorney and was approved by the district judge. That document recited that the parties' agreement was that the defendant would plead no contest to aggravated indecent liberties with a child and that the State would recommend a durational departure to 60 months' imprisonment and further agree that departure factors existed to justify the durational departure. The document did not recite that Toahty-Harvey agreed to accept a lifetime postrelease period nor did it prohibit the defendant from challenging the constitutionality of the postrelease portion of the sentence.

Further, the actions of the parties would corroborate that the parties' agreement only encompassed the 60-month term of imprisonment and not the period of postrelease supervision. The prosecutor did not contend that Toahty-Harvey was breaching the plea agreement when the defense argued against the lifetime period of postrelease supervision. Then, the prosecutor did not object when the judge advised Toahty-Harvey: "And if you decide that you want to appeal the case, whether it's the plea, the sentence, what have you, and you cannot afford an attorney, one would be appointed to represent you." If the State believed at that time that

all of the sentence, including the postrelease supervision period, had been agreed upon by the parties, then the prosecutor would surely have corrected the sentencing court's misinformation about the defendant's right to appeal the sentence.

In short, the record does not support the State's argument that K.S.A. 21-4721(c) deprives this court of jurisdiction to review the district court's ruling on the constitutionality of the lifetime postrelease supervision portion of Toahty-Harvey's sentence.

## CRUEL OR UNUSUAL PUNISHMENT

In the district court, defense counsel specifically advised the sentencing judge as follows: "And it is Mr. Harvey's argument today that [the lifetime postrelease] requirement alone is unconstitutional as a cruel and unusual punishment in violation of Section 9 of the Kansas Constitution." The defense did not present a separate argument based upon the Eighth Amendment to the United States Constitution, neither a case-specific nor a categorical challenge. *Cf. State v. Mossman*, 294 Kan. 901, 281 P.3d 153 (2012) (analyzing the constitutionality of lifetime postrelease supervision under both Kansas and federal constitutions). Accordingly, we will limit our review to a consideration of the sentence's constitutionality under the Kansas Constitution.

### Standard of Review

When determining whether a sentence is cruel or unusual punishment under § 9 of the Kansas Constitution Bill of Rights, a district court must make both legal and factual determinations. Accordingly, an appellate court applies a bifurcated standard of review: "All of the evidence is reviewed, but not reweighed, to determine if there is sufficient support for the district court's factual findings, and the district court's legal conclusions drawn from those facts are reviewed de novo." *Mossman*, 294 Kan. at 906.

### Analysis

In *Mossman*, we observed that lifetime postrelease supervision is statutorily required upon a conviction for aggravated indecent liberties with a child, and, therefore, a constitutional challenge to that part of the sentence "is an indirect attack on the constitution-

ality of the statute as applied." 294 Kan. at 906. Consequently, we followed the separation of powers constraint of beginning with a presumption that the statute is constitutional and resolving all doubts in favor of constitutionality. 294 Kan. at 906-07. But we determined that the issue of the constitutionality of lifetime post-release supervision was ripe for determination under the justiciability doctrine, notwithstanding the current uncertainty about some of the future events that could impact the postrelease supervision or the revocation of such supervision. 294 Kan. at 907. Those preliminary determinations are equally applicable here.

As was the case in *Mossman,* Toahty-Harvey challenges the length of time he was ordered to be on postrelease supervision, rather than complaining that postrelease supervision is a cruel or unusual method of punishment. Accordingly, our decision will be framed by the holding in *Freeman,* where this court opined: "Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." *Freeman,* 223 Kan. at 367; *cf. Mossman,* 294 Kan. at 909 (*Freeman* test not applicable to method of punishment challenge). *Freeman* instructed as follows:

"In determining whether the length of a sentence offends the constitutional prohibition against cruel punishment three techniques should be considered:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

We now refer to *Freeman*'s techniques as the *Freeman* factors or as a "three-part test." See *Mossman,* 294 Kan. at 908. We have clarified that "[n]o one factor controls." *State v. Woodard,* 294 Kan. 717, 723, 280 P.3d 203 (2012). " 'Ultimately, one consideration

may weigh so heavy that it directs the final conclusion,' but 'consideration should be given to each prong of the test.' " *Woodard*, 294 Kan. at 723 (quoting *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 [2008]). Here, the trial court analyzed the length of Toahty-Harvey's sentence under the *Freeman* paradigm.

Regarding the first *Freeman* factor—the nature of the offense and the character of the offender—the district court judge related that Toahty-Harvey committed a sex offense against a 12-year-old child; that although there was no physical harm to the child, there is always the potential for emotional harm when a child is sexually violated; that the Kansas Legislature has determined that sex violations against children are deserving of more severe punishment due to the children's vulnerability and need for protection; that the violation occurred in the sanctity of the child's own home; that Toahty-Harvey's psychological evaluation and evidence of his mild manner and lower than average IQ were submitted for purposes of the motion to depart from the 25-year mandatory minimum sentence and not for the present motion; and that the legislature has determined the community requires protection against those who victimize children. On appeal, Toahty-Harvey continues to argue that he is mild mannered; that he has a low IQ; that he is at low risk for posing a continuing danger to society; and that the victim was not physically harmed.

In *Mossman*, this court addressed similar arguments by a defendant challenging his lifetime postrelease supervision for an aggravated indecent liberties with a child conviction which involved sex acts with a 15-year-old female. In assessing the first *Freeman* factor, *Mossman* opined:

"The judge's conclusion regarding the seriousness of the crime is consistent with statements made by other courts that have rejected the argument that a lengthy sentence for a sex crime against a minor is cruel and unusual punishment. These courts recognize that sex offenses against minors are 'considered particularly heinous crimes.' *People v. Dash*, 104 P.3d 286, 293 (Colo. App. 2004). Further, it is generally recognized that society has a penological interest in punishing those who commit sex offenses against minors because they 'present a special problem and danger to society' and their actions produce " 'particularly devastating effects' " on victims, including physical and psychological harm. *State v. Wade*, 757 N.W.2d 618, 626 (Iowa 2008) (quoting *In re Morrow*, 616 N.W.2d 544 [Iowa

2000]). The State's vital interest in protecting minors from sex activities explains the legislative decision to treat sex crimes against minors as a forcible or violent felony even if no physical force is involved. *Wade*, 757 N.W.2d at 626. Additionally, there are 'grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class. The risk of recidivism posed by sex offenders is "frightening and high." ' *Smith v. Doe*, 538 U.S. 84, 103, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003) (quoting *McKune v. Lile*, 536 U.S. 24, 34, 122 S. Ct. 2017, 153 L. Ed. 2d 47 [2002]); see *Wade*, 757 N.W.2d at 626. These views are consistent with the Kansas Legislature's decision to treat sex crimes against minors, including the crime committed by Mossman, as 'sexually violent' and deserving of lifetime postrelease supervision." 294 Kan. at 909-10.

Here, the district court rejected Toahty-Harvey's argument that the victim was not physically harmed. The court not only recognized that a sex act with a 12-year-old girl is considered to be intrinsically violent and harmful, but it pointed out that this child was violated by the defendant in her own bedroom, exacerbating the potential for psychological harm. The district court's finding that lifetime postrelease supervision was not disproportionate with the nature of the crime is supported by the evidence.

In *Mossman*, the defendant attempted to counter the seriousness of the crime in part by pointing out his low risk of recidivism score, as Toahty-Harvey has done here. The *Mossman* majority was unpersuaded by such arguments that "focus[ed] solely on proportionality from the perspective of punishment or retribution while ignoring other legitimate penological goals such as deterrence, incapacitation, and rehabilitation." 294 Kan. at 911. The court noted that the purposes of postrelease supervision include deterring future crime, aiding rehabilitation of sex offenders, and incapacitating sex offenders by keeping them under a watchful eye. *Mossman* found postrelease supervision particularly appropriate for sex crimes where the risk of recidivism is high. 294 Kan. at 911. Similarly, we are unpersuaded that Toahty-Harvey's mild manner and low test scores, *i.e.*, the character of the offender, trump the nature of the offense in this case when assessing the proportionality of lifetime postrelease supervision.

In conclusion, like the *Mossman* court, we find that substantial competent evidence supports the district court's findings relating to the first *Freeman* factor; we decline to reweigh that evidence.

Accordingly, the first factor supports the imposition of the lifetime postrelease supervision.

The second and third *Freeman* factors are not as fact-sensitive as the first factor. *Mossman* held, under the second factor, that lifetime postrelease supervision is not constitutionally disproportionate to the sentences imposed for other, possibly "more serious," crimes in Kansas. 294 Kan. at 912, 917. Under the third factor, *Mossman* found that lifetime postrelease supervision for aggravated indecent liberties with a child was not disproportionate to the punishments imposed in other jurisdictions for the same offense. 294 Kan. at 920-21; see also *State v. Cameron*, 294 Kan. 884, Syl. ¶ 1, 281 P.3d 143 (2012). Toahty-Harvey does not produce any new arguments which would entice this court to reconsider those determinations in *Mossman*. Consequently, what we said in *Mossman* is applicable here, to-wit:

"Under the facts of this case, a defendant's sentence of lifetime postrelease supervision under K.S.A. 223717(d)(1)(G) for the crime of aggravated indecent liberties with a child is not cruel or unusual punishment under § 9 of the Kansas Constitution Bill of Rights; in other words, the punishment is not so disproportionate to the crime that it shocks the conscience and offends fundamental notions of human dignity. Factors leading to this conclusion include: the nature of the offense, which is serious and is a sex crime against a minor that historically has been treated as a forcible or violent felony regardless of whether there is physical force; the defendant's characteristics; and the penological goals of postrelease supervision, which include retribution, deterrence, incapacitation, and rehabilitation. These factors outweigh the lack of strict proportionality with other sentences in Kansas and other jurisdictions, especially given that the sentence is not grossly disproportionate." 294 Kan. 901, Syl. ¶ 5.

Affirmed.