NOT DESIGNATED FOR PUBLICATION

No. 114,637

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WENDY BROWN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed June 17, 2016.
Affirmed.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., POWELL and GARDNER, JJ.

*Per Curiam*: Wendy Brown pleaded guilty to indecent liberties with a child and aggravated indecent liberties with a child. More than 2 years after Brown was sentenced, the district court granted the State's motion to correct an illegal sentence and imposed lifetime postrelease supervision. On appeal, Brown claims the lifetime postrelease supervision portion of her sentence is unconstitutional under § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 2012, Brown was charged with aggravated indecent liberties with a child, indecent liberties with a child, and two counts of sexual exploitation of a child. Brown was alleged to have solicited her 13-year-old daughter, B.D.R., and her daughter's 15-year-old friend, A.M.S., to lewdly fondle or touch another person. The aggravated indecent liberties with a child charge was filed as an off-grid felony, and the indecent liberties with a child charge was filed as severity level 5 person felony.

Brown entered into a plea agreement with the State in which she agreed to plead guilty to aggravated indecent liberties with a child and indecent liberties with a child. In exchange, the State agreed to dismiss the sexual exploitation of a child charges and amend the aggravated indecent liberties charge to a severity level 3 person felony. Both parties agreed to recommend midrange, consecutive sentences and agreed to no appeals or departures of any kind. Brown further agreed to fully debrief law enforcement officers and testify against any codefendants. At the plea hearing, the district court advised Brown of her rights, and she pled guilty to both charges. No specific factual basis was made, but Brown stated that she committed the offenses alleged in the complaint.

At the sentencing hearing, testimony was presented about the impact Brown's actions had on the lives of the victims and their families. A.M.S.'s mother, B.D.R.'s father, and B.D.R. herself testified. The State also read letters from A.M.S., B.D.R.'s stepmother, and B.D.R.'s younger sister. The district court accepted the joint sentencing recommendation listed in the plea agreement and sentenced Brown to consecutive prison terms of 59 and 32 months, for a controlling term of 91 months, with 36 months of postrelease supervision. Brown was also ordered to register as a sex offender.

More than 2 years later, the State filed a motion to correct an illegal sentence, arguing that the district court's imposition of 36 months' postrelease supervision was

incorrect and, based on Brown's convictions, the district court was statutorily required to impose lifetime postrelease supervision. At the motion hearing, defense counsel argued that lifetime postrelease supervision would be unconstitutionally cruel and/or unusual punishment under *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978).

After determining that the second and third *Freeman* factors were primarily well-settled legal questions, the district court considered the first factor, which required it to make factual findings. The district court found that Brown's actions were more serious than the description given by defense counsel, noting that Brown had sent nude photos of the girls to an adult male and attempted to have the girls engage in sexual activity with that adult male. The district court also determined that Brown did not take responsibility and tried to use her divorce and depression as excuses. Finding that Brown was a danger to society and noting the penological purpose of lifetime postrelease supervision was to prevent Brown from committing similar crimes in the future, the district court granted the State's motion and imposed lifetime postrelease supervision.

Brown timely appeals.

## DID THE DISTRICT COURT ERR BY IMPOSING LIFETIME POSTRELEASE SUPERVISION?

Brown claims that under § 9 of the Kansas Constitution Bill of Rights, her lifetime postrelease supervision sentence is unconstitutionally disproportionate to the crimes for which she was convicted. Brown asks us to find the imposition of lifetime postrelease supervision for the crimes of aggravated indecent liberties with a child and indecent liberties with a child unconstitutional.

A.      *Brown's sentence is not prohibited by § 9 of the Kansas Constitution Bill of Rights.*

Constitutional challenges to a statute ordinarily raise questions of law which are subject to our unlimited review. *State v. Seward*, 289 Kan. 715, 718, 217 P.3d 443 (2009). When deciding whether a sentence is cruel or unusual under § 9 of the Kansas Constitution Bill of Rights, a district court is required to make both legal and factual determinations. See, *e.g.*, *State v. Ortega-Cadelan*, 287 Kan. 157, 160-61, 194 P.3d 1195 (2008). On review, "an appellate court applies a bifurcated standard of review: All of the evidence is reviewed, but not reweighed, to determine if there is sufficient support for the district court's factual findings, and the district court's legal conclusions drawn from those facts are reviewed de novo. [Citations omitted.]" *State v. Mossman*, 294 Kan. 901, 906, 281 P.3d 153 (2012).

Section 9 of the Kansas Constitution Bill of Rights states in part that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." Our Supreme Court has held that a sentence "may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." *Freeman*, 223 Kan. at 367. To assist in making that determination, the *Freeman* court set out the following three-factor test:

> "(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

> "(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes

4

punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

A single factor does not control an appellate court's decision. *Mossman*, 294 Kan. at 908.

1.      *The first* Freeman *factor*

Brown first argues that lifetime postrelease supervision is an unconstitutional sentence because her crimes were nonviolent in that she did not use a weapon, did not kidnap the victims, and did not place the victims in a position where they could lose their lives. For the purposes of lifetime postrelease supervision, however, indecent liberties with a child and aggravated indecent liberties with a child are considered sexually violent crimes. See K.S.A. 2015 Supp. 22-3717(d)(5)(B) and (C). Such offenses—sex crimes against minors—are generally recognized as "'particularly heinous crimes.'" *Mossman*, 294 Kan. at 909 (quoting *People v. Dash*, 104 P.3d 286, 293 [Colo. App. 2004]). Society has a penological interest in punishing sex offenders because they are dangers to society and their crimes cause harmful effects on victims, which is why the legislature has determined to treat sex crimes against minors as violent felonies even if no physical force is involved. See 294 Kan. at 909. We note that lifetime postrelease supervision has been found constitutional in other cases where the defendants, like Brown, had been convicted of aggravated indecent liberties with a child and argued their crimes were nonviolent. See *State v. Swint*, 302 Kan. 326, 342-44, 352 P.3d 1014 (2015); *State v. Spear*, 297 Kan. 780, 800, 304 P.3d 1246 (2013); *State v. Woodard*, 294 Kan. 717, 280 P.3d 203 (2012). As a result, the district court in this case correctly found that Brown's crimes were sexually violent offenses.

5

Further, the categorizing of Brown's crimes as violent sexual offenses notwithstanding, the harmful effects of Brown's actions were evidenced by the victim impact statements presented at her original sentencing hearing. A.M.S.'s mother testified about the effects Brown's actions had on A.M.S. and that because of Brown's betrayal of her trust, she can no longer trust her children with anyone. In a letter read to the district court, A.M.S. said that her life was changed dramatically by Brown's crimes. B.D.R.'s father testified that his girls' lives had been turned upside down and he could never forgive Brown. B.D.R. testified about the destruction to her life that Brown caused. Letters from B.D.R.'s stepmother and B.D.R.'s sister, in which they described the effect of Brown's actions on their lives, were also read.

Brown also contends the district court erred by not considering that her divorce and depression may have impaired her decision-making ability. But defense counsel never made that argument to the district court. The record indicates, moreover, that the district court did consider Brown's divorce and depression and determined that she seemed to be using that event and condition as an excuse, showing that she did not believe she was culpable. Brown also fails to provide any authority demonstrating that a defendant's divorce or depression is relevant to a first *Freeman* factor analysis.

Finally, Brown claims the penological purposes of punishment are not served by sentencing her to lifetime postrelease supervision because she has a low risk of reoffending since she is a first-time offender. Brown, however, does not cite any case where lifetime postrelease supervision for a first-time offender was found unconstitutional, and our Supreme Court has noted that society has a penological interest in punishing sex offenders partly because of the high risk of recidivism among such defendants. See *Mossman*, 294 Kan. at 909-10. Therefore, the district court correctly concluded that the first *Freeman* factor weighed against Brown.

6

2.      *The second* Freeman *factor*

Brown argues under the second *Freeman* factor that her sentence is disproportionate to the crimes of which she was convicted. Because she committed what she considers less severe crimes, she should have been subject to a shorter term of postrelease supervision. Specifically, Brown claims that had she been convicted of second-degree murder, aggravated kidnapping, aggravated trafficking, electronic solicitation, or terrorism and illegal use of weapons of mass destruction, the maximum duration of postrelease supervision that the district court could have imposed would have been 36 months.

Brown's argument is nearly identical to one our Supreme Court addressed in *Mossman*, 294 Kan. at 913, where the court noted that while the overall sentence for someone convicted of second-degree murder may be shorter, a defendant sentenced to lifetime postrelease supervision has the opportunity to serve most of the sentence "in a less restrictive environment." The *Mossman* court also determined that lifetime postrelease supervision was not disproportionate to the sentence a defendant could receive for second-degree murder based on penological purposes, the seriousness of the crime, and other first *Freeman* factor concerns. 294 Kan. at 917. It concluded that the difference in proportionality between the two sentences did not cause the second *Freeman* factor to outweigh the first. 294 Kan. at 917.

Brown essentially makes the same argument here. While Brown's overall sentence may be longer than it would have been had she been convicted of one of the crimes listed in her brief, she has the opportunity to serve the majority of her sentence outside of prison. As in *Mossman*, the second *Freeman* factor does not outweigh the first *Freeman* factor in this case. Absent some indication that our Supreme Court is departing from its previous position, we are bound to follow its precedent. *State v. Belone*, 51 Kan. App. 2d 179, 211, 343 P.3d 128, *rev. denied* 302 Kan. ___ (September 14, 2015).

7

3. *The third* Freeman *factor*

Browns argues her sentence is disproportionate under the third *Freeman* factor because only five states, including Kansas, impose lifetime postrelease supervision for the same offense. She also mentions that 13 other states—Iowa, Indiana, Louisiana, Maine, Maryland, Minnesota, Missouri, Montana, Nebraska, Nevada, Oregon, Tennessee, and Utah—impose mandatory lifetime postrelease supervision for crimes other than the class of offenses in this case. But as before, Brown's argument is nearly identical to the argument made in *Mossman*.

First, it is worth noting the *Mossman* court found that at least three other states also impose lifetime postrelease supervision for the class of offenses similar to aggravated indecent liberties with a child. 294 Kan. at 917-18. The court further found:

> "[E]ven when adding the third *Freeman* factor into the equation and considering that Kansas' provision is more severe than most other jurisdictions, we do not find the sentence to be cruel or unusual. Mossman's offense is serious and is a sex crime against a minor that historically has been treated as a forcible or violent felony regardless of whether there is physical force. Mossman exhibited characteristics of poor impulse control, rebelliousness, and a history of drug abuse. And legitimate penological goals— retribution, deterrence, incapacitation, and rehabilitation—are furthered by lifetime postrelease supervision. These factors outweigh the lack of strict proportionality with other sentences in Kansas and other jurisdictions, especially given that the sentence is not grossly disproportionate." 294 Kan. at 920-21.

In *State v. Toahty-Harvey*, 297 Kan. 101, 298 P.3d 338 (2013), the defendant— who pled nolo contendere to aggravated indecent liberties with a child—made arguments against lifetime postrelease supervision similar to those made in *Mossman* without providing any new reasoning. Our Supreme Court, relying on the holding of *Mossman*, affirmed defendant's lifetime postrelease supervision. *Toahty-Harvey*, 297 Kan. at 109.

Because our Supreme Court is not departing from its position in *Mossman*, we are bound to follow that reasoning. See *Belone*, 51 Kan. App. 2d at 211.

Similarly, Brown committed sex crimes against minors. Brown does not explain how her case is different than *Mossman* or provide any new argument under the third *Freeman* factor. Accordingly, the third *Freeman* factor also weighs against Brown. Thus, based on clear precedent found in *Mossman* and the serious and heinous nature of Brown's offenses, the district court did not err in finding Brown's lifetime postrelease supervision sentence constitutional under § 9 of the Kansas Constitution Bill of Rights.

B.      *Brown has waived any claim that her sentence is categorically unconstitutional under the Eighth Amendment.*

Brown also claims for the first time on appeal that lifetime postrelease supervision is categorically disproportionate, according to the Eighth Amendment, in sex offense cases where physical contact did not occur.

Generally, an issue not raised before the district court cannot be raised for the first time on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Three recognized exceptions to this general rule exist. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). To claim one of those exceptions, though, an appellant must explain why an issue not raised before the district court should be considered for the first time on appeal. Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41); *State v. Williams*, 298 Kan. 1075, 1085-86, 319 P.3d 528 (2014). Kansas appellate courts are to strictly enforce this rule; if an appellant does not comply, then the issue is deemed waived and abandoned for failure to brief it. *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015).

At the hearing on the State's motion to correct an illegal sentence, Brown argued that lifetime postrelease would be cruel and/or unusual punishment under *Freeman*.

Defense counsel made no categorical argument and never mentioned the Eighth Amendment. As a result, Brown is raising this issue for the first time on appeal. However, Brown does not explain why this issue should be considered even though it was not raised before the district court. Thus, according to Rule 6.02(a)(5), Brown has waived and abandoned any argument that lifetime postrelease supervision is categorically unconstitutional by failing to brief it. See *Godfrey*, 301 Kan. at 1044.

In *State v. Reyna*, No. 112,350, 2015 WL 5311918, at *3 (Kan. App. 2015) (unpublished opinion), *petition for rev. filed* October 7, 2015, another panel of this court chose to consider a categorical Eighth Amendment challenge even though the argument was not made to the district court, noting that the Supreme Court had done so in *Williams*, 298 Kan. 1075. But the *Williams* court had allowed the categorical challenge to be raised for the first time on appeal without any explanation from the party only because that claim had been permissibly raised in the past and the rule had not been strictly enforced. See 298 Kan. at 1085. The *Williams* court then went on to say it was unwilling to ignore the plain language of Rule 6.02(a)(5), and future litigants should comply with the rule or risk the issue being deemed waived and abandoned. 298 Kan. at 1085-86. This edict was reaffirmed more than a year later in *Godfrey*, 301 Kan. at 1044, where the court stated that sufficient time had passed since its warning in *Williams* that Rule 6.02(a)(5) would be strictly enforced and litigants had no excuse for noncompliance.

Brown presents no explanation as to why this court should consider her categorical argument for the first time on appeal. Therefore, Brown's argument that lifetime postrelease supervision for sex offenses where physical contact did not occur is categorically unconstitutional under the Eighth Amendment is deemed waived and abandoned. However, even if we considered Brown's categorical challenge on the merits, we would reject her arguments as our Supreme Court has already rejected similar categorical challenges where the crimes did not involve a touching. See *Williams*, 298 Kan. at 1089-90 (possessing an electronic recording depicting child engaging in sex acts);

*State v. Cameron*, 294 Kan. 884, 896-98, 281 P.3d 143 (2012) (aggravated indecent solicitation of a child).

Affirmed.