NOT DESIGNATED FOR PUBLICATION

No. 114,385

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SCOTT MCDONALD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed July 15, 2016. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., PIERRON and ATCHESON, JJ.

*Per Curiam*: Scott McDonald pled to three sex offenses and received 260 months' imprisonment and 36 months' postrelease supervision. Nearly 5 years after McDonald was sentenced, the district court granted the State's motion to correct an illegal sentence and imposed lifetime postrelease supervision. McDonald argues on appeal that his sentence to lifetime postrelease supervision is disproportionate and therefore unconstitutional under § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. We disagree and affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 2010, Scott McDonald pled no contest to one count of attempted aggravated indecent liberties with a child and guilty to one count each of indecent liberties with a child and criminal sodomy. This plea arose from the State's desire to protect the victims from testifying. During a span of at least 2 years, McDonald sodomized, raped, and molested his two teenaged daughters over 280 times. The district court sentenced McDonald to 260 months' imprisonment with 36 months' postrelease supervision.

On April 22, 2015, the State filed a motion to correct an illegal sentence, arguing the legal postrelease period should be for McDonald's lifetime. At the hearing on the motion McDonald did not contest that K.S.A. 2010 Supp. 22-3717(d) required lifetime postrelease supervision but argued that imposition of such postrelease supervision was unconstitutional under the Kansas Constitution. McDonald's attorney briefly mentioned the United States Constitution but did not make an Eighth Amendment argument at the hearing.

After making factual and legal findings on the record, the district court granted the State's motion and imposed lifetime postrelease supervision upon McDonald for his convictions.

McDonald timely appeals.

IS THE IMPOSITION OF LIFETIME POSTRELEASE SUPERVISION
CRUEL AND/OR UNUSUAL PUNISHMENT UNDER
THE UNITED STATES AND KANSAS CONSTITUTIONS?

McDonald argues on appeal that his sentence to lifetime postrelease supervision is disproportionate and therefore unconstitutional according to § 9 of the Kansas

Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. We note that McDonald did not raise his proportionality challenge under the Eighth Amendment before the district court other than in a passing reference, which would typically preclude our review. However, because the analysis for disproportionate challenges under both the Kansas and United States Constitutions is similar, for reasons we will explain, we will address both. See *State v. Mossman*, 294 Kan. 901, 924, 281 P.3d 153 (2012) (Eighth Amendment case-specific inquiry requires examination of whether sentence is disproportionate under circumstances of case and then comparison of punishment with other crimes); *State v. Reed*, 51 Kan. App. 2d 107, 109, 341 P.3d 616 (2015) (two types of proportionality challenges, one of which involves allegation that sentence imposed is disproportionate under Kansas and United States Constitutions in light of circumstances of particular case), *rev. denied* 304 Kan. ___ (April 21, 2016).

Constitutional challenges to a statute ordinarily raise questions of law which are subject to our unlimited review. *State v. Seward*, 289 Kan. 715, 718, 217 P.3d 443 (2009). However, when deciding whether a sentence is disproportionate in light of the circumstances of a particular case, a district court is required to make both legal and factual determinations. See, *e.g.*, *State v. Ortega-Cadelan*, 287 Kan. 157, 160, 194 P.3d 1195 (2008). Accordingly, on review, "an appellate court applies a bifurcated standard of review:  All of the evidence is reviewed, but not reweighed, to determine if there is sufficient support for the district court's factual findings, and the district court's legal conclusions drawn from those facts are reviewed de novo. [Citations omitted.]" *Mossman*, 294 Kan. at 906.

The Eighth Amendment, which is applicable to the states through the Fourteenth Amendment, provides:  "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The United States Supreme Court has declared that "[t]he concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of

3

justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham v. Florida*, 560 U.S. 48, 59, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (quoting *Weems v. United States*, 217 U.S. 349, 367, 30 S. Ct. 544, 54 L. Ed. 793 [1910]).

Section 9 of the Kansas Constitution Bill of Rights states in part that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." Our Supreme Court has held that a sentence "may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978). To assist in making that determination, the *Freeman* court set out the following three-factor test:

> "(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

> "(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

> "(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

A single factor does not control an appellate court's decision. *Mossman*, 294 Kan. at 908.

4

1.	*The first* Freeman *factor*

The first *Freeman* factor requires us to make a case-specific determination regarding the nature of the offense and the character of the offender. 223 Kan. at 367. McDonald argues the first factor weighs in his favor as no penological purposes are served by his postrelease supervision because he has no prior criminal history and he is no longer a danger to society because he has taken responsibility for his crimes against his daughters.

McDonald was convicted of attempted aggravated indecent liberties with a child, indecent liberties with a child, and criminal sodomy. The Kansas Legislature has determined that indecent liberties with a child and criminal sodomy are, by their very nature, sexually violent crimes. See K.S.A. 2010 Supp. 22-3717(d)(1)(G)(2)(B), (D). Similarly, this court has repeatedly held that the "'attempt' nature of a conviction does not remove it from the general category of sexually violent crimes subject to lifetime postrelease supervision." *Reed*, 51 Kan. App. 2d 107, Syl. ¶ 6. Such offenses—sex crimes against minors—are generally recognized as "'particularly heinous crimes.'" *Mossman*, 294 Kan. at 909 (quoting *People v. Dash*, 104 P.3d 286, 293 [Colo. App. 2004]). Society has a penological interest in punishing sex offenders because they are dangers to society and their crimes cause harmful effects on victims, which is why the legislature has determined to treat sex crimes against minors as violent felonies even if no physical force was involved. See 294 Kan. at 909.

McDonald relies on *State v. Proctor*, No. 104,697, 2013 WL 6726286 (Kan. App. 2013), arguing that the nature of the offenses involved and his character cause lifetime postrelease supervision to be unconstitutional. In *Proctor*, the defendant was 19 years old and his victim was 12 years old; he received probation, had no prior criminal history, and had been sexually abused as a child but had not received treatment; and the illicit contact occurred over a span of months. Here, McDonald's victims were his own daughters, and

5

the illicit contact occurred over 280 times for years. At the time of his sentencing, McDonald was 39 years old, not barely an adult like Proctor. McDonald received 260 months' imprisonment, not probation. Although McDonald had no prior criminal history, there is no indication in the record on appeal that McDonald was sexually abused as a child.

When discussing the first *Freeman* factor at McDonald's resentencing the district court stated:

> "[A]t the time that we disposed of this case back in August of 2010, five years ago, Mr. McDonald in his mind justified what he was doing. He knew it was against the law but he did it anyway and that doesn't really then militate in his favor in terms of character. There's not much to say favorable on the character issue.
>
> "With respect to the nature of the crime these are the kind of crimes that were committed over a period of time and were allowed to go on for a period of time by the exercise of Mr. McDonald of power or influence over his daughters and as a result of that is serious damage to them psychologically. Hopefully, they're recovering from that.
>
> ". . . [Y]our grief changes over time and I suspect that the girls will be changing in how they deal with this as time goes on but it's never going to be over but the repeated nature and the exercise of the authority by Mr. McDonald militates against finding that this lifetime post release is unconstitutional . . . ."

Such a finding is similar to the Kansas Supreme Court's determination in *Mossman*. There, the Supreme Court upheld the imposition of lifetime postrelease supervision for a 25-year-old defendant who had a consensual sexual relationship with a 15-year-old girl, stating the State had an overriding interest in protecting children from such crimes and the defendant's crime was one deemed a violent sexual offense by the legislature. 294 Kan. at 909-10. Even considering Mossman's lack of criminal history, low risk of recidivism, acceptance of responsibility, and level of remorse, our Supreme

6

Court held the first *Freeman* factor weighed in favor of finding Mossman's sentence constitutional. 294 Kan. at 912.

Here, after reviewing but not reweighing all of the evidence, there is sufficient evidence to support the district court's finding that McDonald's deficient character was not outweighed by mitigating circumstances. The first *Freeman* factor weighs towards finding McDonald's sentence constitutional.

2.     *The second* Freeman *factor*

The second *Freeman* factor requires us to look at the punishment being challenged as unconstitutional and compare it to other punishments in the state for other more serious crimes to determine if the sentence is grossly disproportionate. 223 Kan. at 367. McDonald argues that lifetime postrelease supervision for attempted aggravated indecent liberties and criminal sodomy is greater than the postrelease supervision period for second-degree murder. He also argues that the lifetime postrelease supervision period for aggravated indecent liberties is longer than the postrelease supervision periods for second-degree murder, aggravated kidnapping, aggravated human trafficking, and electronic solicitation of a child, yet those crimes are of a higher severity level.

McDonald's argument is nearly identical to one our Supreme Court addressed in *Mossman*. There, the court noted that while the overall sentence for someone convicted of second-degree murder may be shorter, a defendant sentenced to lifetime postrelease supervision has the opportunity to serve most of the sentence "in a less restrictive environment." 294 Kan. at 913. The *Mossman* court determined that lifetime postrelease supervision was not disproportionate to the sentence a defendant could receive for second-degree murder based on penological purposes, the seriousness of the crime, and the first *Freeman* factor concerns. 294 Kan. at 917. It concluded that the difference in

proportionality between the two sentences did not cause the second *Freeman* factor to outweigh the first. 294 Kan. at 917.

Likewise, while McDonald's overall sentence may be longer than it would have been had he been convicted of one of the crimes listed in his brief, he has the opportunity to serve the majority of his sentence outside of prison. As in *Mossman*, the second *Freeman* factor does not outweigh the first *Freeman* factor in this case. In short, McDonald is essentially making the same argument that was rejected in *Mossman*. As we are bound to follow Kansas Supreme Court precedent absent some indication it is departing from its previous position, we are also compelled to reject McDonald's arguments. *State v. Belone*, 51 Kan. App. 2d 179, 211, 343 P.3d 128, *rev. denied* 302 Kan. ___ (September 14, 2015).

3.      *The third* Freeman *factor*

The third *Freeman* factor requires us to look at the punishment being challenged as unconstitutional and compare it to punishment for the same crime in other states to determine if the sentence is grossly disproportionate. 223 Kan. at 367. McDonald first argues that his sentence for attempted aggravated indecent liberties with a child is disproportionate under the third *Freeman* factor because only two states—Kansas and Nebraska—allow for lifetime postrelease supervision for a person convicted of a similar offense and two other states—Minnesota and Oklahoma—allow for lifetime postrelease supervision for similar offenses only when such person has a prior sex offense conviction.

McDonald also argues that his sentence for aggravated indecent liberties with a child is disproportionate under the third *Freeman* factor because only five states, including Kansas, impose lifetime postrelease supervision for first time offenders committing the same offense. He mentions that 16 other states only impose mandatory

8

lifetime postrelease supervision for crimes similar to McDonald's when the person is a repeat offender. Finally, McDonald argues that although numerous other jurisdictions have similar sentences for criminal sodomy, this factor is immaterial because not every *Freeman* factor need weigh in his favor and the other *Freeman* factors weigh against the constitutionality of his sentence.

Unfortunately for McDonald, his arguments are nearly identical to those made in *Mossman*, where our Supreme Court stated:

"[E]ven when adding the third *Freeman* factor into the equation and considering that Kansas' provision is more severe than most other jurisdictions, we do not find the sentence to be cruel or unusual. Mossman's offense is serious and is a sex crime against a minor that historically has been treated as a forcible or violent felony regardless of whether there is physical force. Mossman exhibited characteristics of poor impulse control, rebelliousness, and a history of drug abuse. And legitimate penological goals—retribution, deterrence, incapacitation, and rehabilitation—are furthered by lifetime postrelease supervision. These factors outweigh the lack of strict proportionality with other sentences in Kansas and other jurisdictions, especially given that the sentence is not grossly disproportionate." 294 Kan. at 920-21.

Therefore, as with the other two factors, the third *Freeman* factor also weighs against McDonald.

We also find that McDonald's punishment is not disproportionate under the Eighth Amendment. While this issue typically would not be considered given that McDonald never explains why it should be considered for the first time on appeal, *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), because we can easily dispense with the issue and thereby eliminate needless future litigation, we will do so.

9

An Eighth Amendment case-specific proportionality challenge involves a two-part test.

> "'A court must begin by comparing the gravity of the offense and the severity of the sentence. [Citation omitted.] "[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality" the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. [Citation omitted.] If this comparative analysis "validate[s] an initial judgment that [the] sentence is grossly disproportionate," the sentence is cruel and unusual. [Citation omitted.]'" *Mossman*, 294 Kan. at 922 (quoting *Graham*, 130 S. Ct. at 2022).

In *Mossman*, although the district court limited its findings to those required by *Freeman*, our Supreme Court held that such findings coincided with the case-specific proportionality factors under the Eighth Amendment and held that because Mossman's sentence was not disproportionate under the Kansas Constitution, it also was not disproportionate under the Eighth Amendment, eliminating the need to engage in the secondary comparison analysis. 294 Kan. at 922, 924. The same is true here. Because McDonald's sentence is not disproportionate under the Kansas Constitution, it is not disproportionate under the Eighth Amendment either.

McDonald's crimes were serious and were committed against minors. McDonald does not explain how his case is different than *Mossman* nor does he provide us with any new arguments that would entitle him to relief. In *State v. Toahty-Harvey*, 297 Kan. 101, 109, 298 P.3d 338 (2013), the defendant made the same arguments that were made in *Mossman* without providing any new reasoning, and our Supreme Court relied on the holding of *Mossman*. Thus, based on the clear precedent found in *Mossman* and the serious and heinous nature of McDonald's offenses, his sentence of lifetime postrelease supervision is not cruel and/or unusual punishment under the Kansas and United States Constitutions.

10

Affirmed.