NOT DESIGNATED FOR PUBLICATION

No. 114,646

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRYANT SUTTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed June 24, 2016. Affirmed.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., MCANANY and ATCHESON, JJ.

*Per Curiam*: Bryant Sutton appeals the imposition of lifetime postrelease supervision following his no-contest plea to two counts of aggravated indecent solicitation of a child. He contends that imposing lifetime postrelease supervision violates the United States and Kansas constitutional prohibitions against cruel and/or unusual punishment.

In 2007, Sutton was charged with aggravated indecent liberties with a child, attempted rape, and aggravated indecent solicitation of a child. Pursuant to a plea agreement, the charges were reduced and Sutton entered a no-contest plea to two counts of aggravated indecent solicitation of a child.

1

At Sutton's plea hearing, the State presented the affidavit of the investigating police officer as factual support for Sutton's crimes. According to the officer's affidavit, Sutton, age 18, fondled his 6-year-old cousin. He pulled the child into a car and told her to touch his penis and "'do things like big people do.'" The child told Sutton that she did not want to play this game, but Sutton put his hand down her pants and would not let her go. This conduct occurred more than once. She also reported that on many occasions, both in his car and in his room, Sutton had sexual intercourse with her and ejaculated in the process. The district court accepted Sutton's pleas and sentenced him to a controlling term of 89 months in prison, with 24 months of postrelease supervision.

Eight years later, in 2015, the State moved to correct Sutton's sentence, claiming that it was illegal because the district court was required to impose lifetime postrelease supervision and failed to do so. Sutton argued that under the factors to be considered in *State v. Freeman*, 223 Kan. 362, 574 P.2d 950 (1978), imposing lifetime postrelease supervision constitutes unconstitutional cruel and unusual punishment. He asked the district court to consider his youth, mental illness, and a claim that the victim had suffered no physical injury. He also asked the court to compare the punishment imposed in this case to far more serious offenses and to crimes in other jurisdictions.

Applying the *Freeman* factors, the district court granted the State's motion and imposed lifetime postrelease supervision. In doing so, the court found that (1) Sutton received a very favorable plea agreement considering the facts supporting the charges and the potential for a Jessica's Law lifetime sentence; (2) his victim was a young child; (3) Sutton was in a position of trust; (4) the crime was a violent sexual offense; (5) since his original sentencing Sutton had been on parole but violated parole and was returned to prison at Larned; (6) Sutton had 25 disciplinary reports while in prison, including reports of possession of sexually explicit materials and four reports in the past 2 months, all of which indicated that Sutton was not taking the matter seriously; (7) Sutton posed a risk to society; (8) lifetime supervision served a valid penological purpose; (9) lifetime

2

postrelease supervision under these circumstances does not shock the court's conscience, and (10) the fact that "as I understand the statute [this matter] can be reviewed after 10 years if, in fact, you can go 10 years by living by the rules everyone else does."

*Discussion*

On appeal, Sutton contends that lifetime postrelease supervision is grossly disproportionate in his case and therefore cruel and unusual punishment in violation of § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution.

K.S.A. 2015 Supp. 22-3717(d)(1)(G) requires lifetime postrelease supervision for persons convicted of sexually violent crimes. Whether K.S.A. 2015 Supp. 22-3717(d)(1)(G) is constitutional is a question of law over which we have unlimited review. *State v. Hilt*, 299 Kan. 176, 202, 322 P.3d 367 (2014).

We begin by presuming the statute is constitutional and resolve all doubts in favor of constitutionality. *State v. Toahty-Harvey*, 297 Kan. 101, 106, 298 P.3d 338 (2013). When "deciding whether a sentence is cruel and unusual under § 9 of the Kansas Constitution Bill of Rights, a district court must make both legal and factual determinations. [Citation omitted.]" *State v. Mossman*, 294 Kan. 901, 906, 281 P.3d 153 (2012). In our review, we do not reweigh the evidence but consider whether there is sufficient evidentiary support for the district court's factual findings. We review de novo the district court's legal conclusions drawn from those facts. 294 Kan. at 906.

*Section 9 Analysis—State Constitutional Claim*

Section 9 of the Kansas Constitution Bill of Rights prohibits cruel or unusual punishment. A punishment may be impermissibly cruel or unusual "'if it is so

3

disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'" *State v. Spear*, 297 Kan. 780, 799, 304 P.3d 1246 (2013) (quoting *State v. Gomez*, 290 Kan. 858, Syl. ¶ 9, 235 P.3d 1203 [2010]).

Kansas courts analyze challenges under § 9 of the Kansas Constitution Bill of Rights by using the three-factor analysis provided in *Freeman* to determine whether a sentence for lifetime postrelease supervision is a cruel or unusual punishment. See *State v. Ochs*, 297 Kan. 1094, 1107, 306 P.3d 294 (2013). The process involves examining the following *Freeman* factors:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." *Freeman*, 223 Kan. at 367.

Accord *State v. Levy*, 292 Kan. 379, 384-85, 253 P.3d 341 (2011); *Gomez*, 290 Kan. at 867; *State v. Reyna*, 290 Kan. 666, 689, 234 P.3d 761, *cert. denied* 562 U.S. 1014 (2010).

None of the *Freeman* factors is controlling. *State v. Woodard*, 294 Kan. 717, 723, 280 P.3d 203 (2012). Ultimately, one factor may bear so much weight that it directs the conclusion, but all three factors should be considered by the court. *State v. Ortega-Cadelan*, 287 Kan. 157, 161, 194 P.3d 1195 (2008). The first *Freeman* factor is not a

threshold determination. Rather, we should take a "holistic approach" in applying the factors. *State v. Seward*, 296 Kan. 979, 985, 297 P.3d 272 (2013).

*First* Freeman *Factor*

We noted the district court's findings earlier. Findings (1), (2), (3), (4), (5), (6), (7) and (8) relate to the nature of the offense and the character of the offender. Sutton does not contend the district court's findings were not supported by substantial evidence. But he contends that the district court erred in finding (4) that the crime was violent because he did not use a weapon to commit the crimes and because he did not kidnap the victim. He disregards the fact that the legislature has characterized his crime as a sexually violent crime. Under K.S.A. 2015 Supp. 22-3717(d)(5)(G), aggravated indecent solicitation of a child, Sutton's crime of conviction, is a sexually violent crime. Further, while he was not charged with kidnapping, the victim reported that while committing the crimes Sutton "would not let her go." We are not persuaded by this challenge to the district court's findings.

Sutton also complains that the district court did not seem to consider his young age of 18 years, "perhaps making [him] less culpable for his crime." But the court specifically stated:

> "I understand you are young. I understand that's a fact the court can consider. But the fact remains you molested a 6-year-old cousin and I have a duty to protect the safety of society and I see nothing in your record to this point and nothing in the facts of the crime that shock the conscience that you would have a . . . lifetime postrelease."

Sutton also argues that he will be in custody for the remainder of his life and subjected to many restrictions on his liberties, such as not being allowed to travel or drink beer without his parole officer's permission and being forced to pay supervision fees as directed by his parole officer. While Sutton focuses on the restrictions that will be placed

on him during his lifetime postrelease supervision, he fails to recognize the legitimate deterrence, incapacitation, and rehabilitation aspects of his supervision. The Supreme Court noted the deterrent effect of postrelease supervision on future crimes "'by keeping them under the watchful eye of probation officers who may be able to detect problems before they result in irreparable harm to innocent children.'" *Mossman*, 294 Kan. at 911 (quoting *United States v. Williams*, 636 F.3d 1229, 1234 [9th Cir.], *cert. denied* 132 S. Ct. 188 [2011]); see *Toahty-Harvey*, 297 Kan. at 107-09.

In *Mossman*, the Kansas Supreme Court upheld the imposition of lifetime postrelease supervision for a 25-year-old defendant who had a consensual sexual relationship with a 15-year-old girl. The Supreme Court noted that the crime was one that had been deemed a violent sexual offense, regardless of its consensual nature, and the State had an overriding interest in protecting children from such crimes. Even though the defendant had no criminal history, had a low risk of recidivism, had accepted responsibility and shown remorse, the district court's findings under the first factor weighed in favor of finding the imposition of lifetime postrelease supervision to be constitutional. The Kansas Supreme Court stated:

> "The judge's conclusion regarding the seriousness of the crime is consistent with statements made by other courts that have rejected the argument that a lengthy sentence for a sex crime against a minor is cruel and unusual punishment. These courts recognize that sex offenses against minors are 'considered particularly heinous crimes.' *People v. Dash*, 104 P.3d 286, 293 (Colo. App. 2004). Further, it is generally recognized that society has a penological interest in punishing those who commit sex offenses against minors because they 'present a special problem and danger to society' and their actions produce "'particularly devastating effects'" on victims, including physical and psychological harm. *State v. Wade*, 757 N.W.2d 618, 626 (Iowa 2008) (quoting *In re Morrow*, 616 N.W.2d 544 [Iowa 2000]). The State's vital interest in protecting minors from sex activities explains the legislative decision to treat sex crimes against minors as a forcible or violent felony even if no physical force is involved. *Wade*, 757 N.W.2d at 626. Additionally, there are 'grave concerns over the high rate of recidivism among convicted

6

sex offenders and their dangerousness as a class. The risk of recidivism posed by sex offenders is "frightening and high."' *Smith v. Doe*, 538 U.S. 84, 103, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003) (quoting *McKune v. Lile*, 536 U.S. 24, 34, 122 S. Ct. 2017, 153 L. Ed. 2d 47 [2002]); see *Wade*, 757 N.W.2d at 626. These views are consistent with the Kansas Legislature's decision to treat sex crimes against minors, including the crime committed by Mossman, as 'sexually violent' and deserving of lifetime postrelease supervision." *Mossman*, 294 Kan. at 909-10.

As mitigating factors Sutton cites (1) his youth, (2) no use of a weapon, (3) his conviction was only for solicitation of a sex act, and (4) this was his first conviction of a sex crime. We have already addressed items (1) and (2). With respect to item (3), Sutton would have the district court disregard the unchallenged facts at his sentencing regarding the nature of his conduct. With respect to item (4), while this may have been Sutton's first conviction, there certainly was evidence of his ongoing inability to conform his conduct to legitimate authority. Further, the evidence at sentencing did not disclose an isolated incident but rather a pattern of ongoing sex abuse.

There are fewer mitigating factors in Sutton's case than in either *Mossman* or *Toahty-Harvey*. His victim was much younger than the victims in *Mossman* and *Toahty-Harvey*. There is no evidence that Sutton had a low IQ or a low risk of recidivism.

Based on the foregoing, we find no error in the district court's factual findings or legal conclusion on the first *Freeman* factor.

*Second* Freeman *Factor*

Under the second *Freeman* factor, the court must compare the punishment in this case with punishments imposed in Kansas for more serious offenses. Sutton was convicted of aggravated indecent solicitation of a child, but the district court found that the facts in the case supported the original charges, including the crime of aggravated

7

indecent liberties with a child, a Jessica's Law crime. The district court found that Sutton received the benefits of a lesser prison sentence by accepting a plea to the amended charges.

Sutton offers a number of examples of more serious crimes that have shorter periods of postrelease supervision, such as second-degree murder, voluntary manslaughter, aggravated kidnapping, aggravated human trafficking, electronic solicitation of a child, and terrorism and illegal use of weapons of mass destruction. But our Supreme Court has repeatedly rejected this argument. See *State v. Funk*, 301 Kan. 925, 941-42, 349 P.3d 1230 (2015); *Toahty-Harvey*, 297 Kan. at 109; *State v. Cameron*, 294 Kan. 884, 892-93, 281 P.3d 143 (2012). Instead, our Supreme Court looks to the total length of the sentence, including actual incarceration, rather than merely the length of postrelease supervision. See *Mossman*, 294 Kan. at 912-13; *Cameron*, 294 Kan. at 892-93.

We do not find under the second *Freeman* factor that the imposition of lifetime postrelease supervision is grossly disproportionate to the sentences imposed for other more serious offenses in Kansas.

*Third* Freeman *Factor*

Under the third *Freeman* factor we compare Sutton's punishment with punishments imposed in other jurisdictions for the same offense. In *Mossman* and *Cameron* our Supreme Court concluded that after comparing Kansas law with the laws of other jurisdictions, the imposition of lifetime postrelease supervision is not cruel or unusual punishment. *Mossman*, 294 Kan. at 919-20; *Cameron*, 294 Kan. at 894-95. Sutton has presented no argument that the laws of other jurisdictions have significantly changed since *Mossman* and *Cameron*. We are bound to follow our Supreme Court's holding on this point as expressed in *Mossman* and *Cameron* absent some indication it is

8

changing its position. We see no such indication. Later Supreme Court decisions have not deviated from this holding. See *Funk*, 301 Kan. at 942 (attempted indecent solicitation of a child); *Toahty-Harvey*, 297 Kan. at 109 (aggravated indecent liberties with a child). Sutton's sentence is not grossly disproportionate to sentences for similar crimes in other jurisdictions.

Considering all three *Freeman* factors, the imposition of lifetime postrelease supervision does not violate § 9 of the Kansas Constitution Bill of Rights.

*Eighth Amendment Analysis—Federal Constitutional Claim*

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. The Eighth Amendment has been made applicable to the states under the Due Process Clause of the Fourteenth Amendment. See *Robinson v. California*, 370 U.S. 660, 667, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962).

There are two types of Eighth Amendment challenges that can be made:  (1) case specific proportionality challenges; and (2) categorical proportionality challenges. See *Graham v. Florida*, 560 U.S. 48, 59, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); *Mossman*, 294 Kan. at 921-22. Claims in the first classification are inherently fact-specific, and "'[a]ppellate courts do not make factual findings but review those made by district courts.'" *Gomez*, 290 Kan. at 864 (quoting *State v. Thomas*, 288 Kan. 157, 161, 199 P.3d 1265 [2009]). Sutton raises challenges under both.

*Case-Specific Analysis*

Sutton concedes that a case-specific analysis is virtually identical to an analysis under § 9 of the Kansas Constitution Bill of Rights. "The Cruel and Unusual Punishment Clauses of the Eighth Amendment to the United States Constitution and § 9 of the Kansas

Constitution Bill of Rights are nearly identical and are to be construed similarly." *State v. Scott*, 265 Kan. 1, Syl. ¶ 1, 961 P.2d 667 (1998).

To determine whether a term-of-years sentence is grossly disproportionate for a particular defendant's crime,

> "[a] court must begin by comparing the gravity of the offense and the severity of the sentence. [Citation omitted.] '[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. [Citation omitted.] If this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual. [Citation omitted.]" *Graham*, 560 U.S. at 60 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1005, 111 S. Ct. 2680, 115 L. Ed. 2d 836 [1991]).

Analysis of a § 9 challenge under the *Freeman* factors applies with equal force to a case-specific Eighth Amendment challenge. *State v. Ross*, 295 Kan. 424, 429, 284 P.3d 309 (2012).

The Eighth Amendment forbids extreme sentences that are grossly disproportionate to the crime. *Ewing v. California*, 538 U.S. 11, 22, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003). To demonstrate the rarity of a finding of gross disproportionality, one need only look to United States Supreme Court cases upholding life sentences for nonviolent property crimes. See, *e.g.*, *Lockyer v. Andrade*, 538 U.S. 63, 70, 77, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003) (sentence of two consecutive prison terms of 25 years-to-life for third-strike conviction for stealing approximately $150 in videotapes); *Ewing*, 538 U.S. at 28-31 (25 years-to-life sentence under three-strike provision for stealing approximately $1,200 of merchandise); *Harmelin*, 501 U.S. at 961, 994-96 (life sentence without possibility of parole for first felony offense, which was possession of more than

10

650 grams of cocaine); *Rummel v. Estelle*, 445 U.S. 263, 266, 284-85, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980) (life sentence with possibility of parole, imposed under a Texas recidivist statute, for a defendant convicted of obtaining $120.75 by false pretenses [his third felony conviction], an offense normally punishable by imprisonment for 2 to 10 years); but see *Solem v. Helm*, 463 U.S. 277, 296-97, 303, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983) (life sentence without possibility of parole imposed on adult offender was "significantly disproportionate" to the defendant's crime, which was predicated on a current offense of "uttering a 'no account' check" for $100 and the defendant's lengthy criminal history that included six nonviolent felonies).

The United States Supreme Court has upheld life sentences for a wide range of crimes less serious than Sutton's crimes. Sutton's crimes are crimes that the legislature views as especially serious, categorizing them as violent crimes even when no force is used.

We cannot ignore the uncontested facts that led to Sutton's convictions. Sutton's victim was a child of tender age and her much older cousin was in a position of trust. Sutton restrained the child when she did not want to participate in these crimes. There was evidence that he repeatedly engaged in sexual intercourse with the child. Considering the specific facts of this case, we find no error in the district court's conclusion that Sutton's lifetime postrelease supervision does not violate the Eighth Amendment.

*Categorical Analysis*

Sutton also argues that lifetime postrelease supervision is a categorically disproportionate punishment when imposed upon individuals convicted of aggravated indecent solicitation of a child. We review this categorical challenge to Sutton's sentence de novo. *Mossman*, 294 Kan. at 925.

11

Under the categorical challenge, we limit our consideration to the elements of the crime of conviction, not the underlying facts. Here, Sutton was convicted of aggravated indecent solicitation of a child, which consists of "inviting, persuading or attempting to persuade a child under the age of 14 years to enter any vehicle, building, room or secluded place with intent to commit an unlawful sexual act upon or with the child." K.S.A. 21-3511(b).

We employ a two-prong test to evaluate a categorical proportionality challenge to a sentence:

> "The Court first considers 'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue [Citation omitted.] Next, guided by 'the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning and purpose' [citation omitted], the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution. [Citation omitted.]" *Graham*, 560 U.S. at 61.

See *Gomez*, 290 Kan. at 861 (recognizing the *Graham* categorical proportionality challenge).

Under this test, we must determine whether the challenged sentencing scheme serves legitimate penological goals. Retribution, deterrence, incapacitation, and rehabilitation are legitimate penological interests. *Graham*, 560 U.S. at 71. In order to successfully challenge a sentence under this test, a defendant must show that based on the characteristics of the class of offenders and the nature of the offense, the sentencing practice is disproportionate with the offender's culpability. *State v. Williams*, 298 Kan. 1075, 1087-88, 319 P.3d 528 (2014).

12

Sutton argues there is a national consensus against lifetime postrelease supervision for individuals with whom he is similarly situated. Only seven states allow lifetime postrelease supervision for this class of offenses. But our Supreme Court has turned to *United States v. Williams*, 636 F.3d 1229 (9th Cir.), *cert. denied* 132 S. Ct. 188 (2011), for guidance when considering categorical challenges to sentences for sex offenses. See *Mossman*, 294 Kan. at 929-30; *Cameron*, 294 Kan. at 897-98. In *United States v. Williams*, the court concluded that "objective indicia" suggest society is comfortable with the common practice of imposing lifetime supervised release for sex offenders. 636 F.3d at 1233-34.

In *State v. Reed*, 51 Kan. App. 2d 107, Syl. ¶ 6, 341 P.3d 616 (2015), *rev. denied* 304 Kan. ___ (2016), a panel of this court rejected the defendant's categorical challenge to his sentence for attempted aggravated indecent liberties, finding that "[t]he 'attempt' nature of the conviction does not remove it from the general category of sexually violent crimes subject to lifetime postrelease supervision." The *Reed* court rejected the argument that there is a national consensus against lifetime postrelease supervision, finding instead that it is "'a widespread phenomenon.'" 51 Kan. App. 2d at 113 (quoting *State v. Barrera*, No. 104,667, 2013 WL 517581, at *9-10 [Kan. App.] [unpublished opinion], *rev. denied* 297 Kan. 1248 [2013]); see *State v. Hindman*, No. 110,261, 2014 WL 5312925, at *6-7 (Kan. App. 2014) (unpublished opinion) (attempted indecent liberties with a child subject to lifetime postrelease supervision), *rev. denied* 302 Kan. ___ (2015). The defendant in *Reed* was convicted of an attempted sex crime, *i.e.*, committing "an overt act toward the perpetration of a crime [with the intent] to commit such crime but [failing] in the perpetration thereof." K.S.A. 21-3301. Sutton, on the other hand, was convicted of completed sex crimes. Further, in *State v. Russell*, No. 107,588, 2013 WL 3867180, at *4-6 (Kan. App. 2013) (unpublished opinion), *rev. denied* 299 Kan. 1273 (2014), a panel of our court determined that attempted aggravated indecent solicitation of a child is subject to lifetime postrelease supervision. Here, Sutton was convicted of aggravated indecent solicitation of a child, an even more serious offense.

Because Kansas considers aggravated indecent solicitation of a child to be a sexually violent offense, we find that Sutton's crime of conviction falls within the classification of crimes for which Kansas courts find it permissible to impose lifetime postrelease supervision. We are duty bound to follow Kansas Supreme Court precedent regarding the imposition of lifetime postrelease supervision following convictions of sexually violent crimes. *State v. Capps*, No. 107,361, 2013 WL 1444501, at *2 (Kan. App.) (unpublished opinion), *rev. denied* 297 Kan. 1249 (2013).

In the second step of a categorical analysis, we are asked to exercise independent judgment to determine whether a sentence is unconstitutional. Sutton argues that the crime of aggravated indecent solicitation of a child does not justify lifetime postrelease supervision because it does not serve the legitimate penological goals of retribution, deterrence, incapacitation, and rehabilitation.

Our Kansas Supreme Court has looked to the 9th Circuit for guidance on whether lifetime postrelease supervision serves the legitimate penological goals of retribution, deterrence, incapacitation, and rehabilitation for the second part of this analysis. See *Williams*, 298 Kan. at 1089; *Mossman*, 294 Kan. at 930; *Cameron*, 294 Kan. at 898. In *United States v. Williams*, the 9th Circuit court found:

> "Rehabilitation and incapacitation are central purposes of the criminal justice system, and they are particularly critical here given the propensity of sex offenders to strike again. Supervised release can further the end of rehabilitating sex offenders. For instance, in this case, the express conditions of supervised release will require [the defendant] to receive sex offender treatment and to avoid situations where he may be tempted to offend again. Relatedly, supervised release helps incapacitate sex offenders by keeping them under the watchful eye of probation officers who may be able to detect problems before they result in irreparable harm to innocent children." 636 F.3d at 1234.

Because our Supreme Court has followed this reasoning and found that lifetime postrelease supervision serves the valid penological objectives of deterring such conduct and in incapacitating and rehabilitating the offender, we conclude that lifetime postrelease supervision for aggravated indecent solicitation of a child is not categorically disproportionate and does not amount to cruel and unusual punishment under the Eighth Amendment.

Affirmed.