No. 48,932

STATE OF KANSAS, *Appellee,* v. BARBARA ANN FREEMAN, *Appellant.*

(574 P 2d 950)

Opinion filed January 21, 1978.

*T. L. O'Hara,* of Warner, Bailey, O'Hara & Busch, of Wichita, argued the cause, and *Charles A. O'Hara,* of the same firm, was with him on the brief for the appellant.

*Stuart W. Gribble,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellant.

The opinion of the court was delivered by

FROMME, J.: The appellant, Barbara Ann Freeman, was convicted by a jury of murder in the second degree in the death of her husband on November 20, 1976. This crime is set out in Article 34, Section 02 of Chapter 21 of the Kansas Statutes Annotated and is commonly known as an Article 34 crime. She fired eight bullets from a handgun into the body of her drunken husband after he had attempted to hit her. She was given a sentence of five years to life, which is the least sentence permissible for such crime under K.S.A. 21-4501(*b*). Probation was requested but denied by the sentencing judge by reason of K.S.A. 1977 Supp. 21-4618 which denies probation to any defendant who is convicted of an Article 34 crime in which the defendant used a firearm in the commission thereof. The additional facts surrounding this murder have no real significance on appeal. We will treat the points raised by appellant in her brief in reverse order.

Appellant attacks the constitutionality of K.S.A. 1977 Supp. 21-4618 which mandatorily requires that probation be denied. She contends the statute is constitutionally impermissible on three grounds: (1) It constitutes cruel and unusual punishment; (2) it denies her equal protection of the laws; and (3) it deprives her of liberty without due process of law.

K.S.A. 1977 Supp. 21-4618 became effective July 1, 1976, and provides:

"Probation shall not be granted to any defendant who is convicted of the commission of any crime set out in article 34 of chapter 21 of the Kansas Statutes Annotated in which the defendant used any firearm in the commission thereof and such defendant shall be sentenced to not less than the minimum sentence of imprisonment authorized by law for that crime. This section shall apply only to crimes committed after the effective date of this act."

K.S.A. 1977 Supp. 22-3717(8), effective July 1, 1976, provides:

"Notwithstanding any other provision of this section, any person sentenced pursuant to K.S.A. 1976 Supp. 21-4618 shall not be eligible for parole therefrom prior to serving the entire minimum sentence imposed, . . ."

When these concomitant statutes are read in conjunction the legislative effect is to impose mandatory minimum sentences for all Article 34 crimes in which the defendant used a firearm in the commission of the crime. These statutes appear to indicate a legislative retrenchment from the policy declared in K.S.A. 21-4601, effective July 1, 1970, which reads:

"This article shall be liberally construed to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics, circumstances, needs, and potentialities as revealed by case studies; that dangerous offenders shall be correctively treated in custody for long terms as needed; and that other offenders shall be dealt with by probation, suspended sentence, or fine whenever such disposition appears practicable and not detrimental to the needs of public safety and the welfare of the offender, or shall be committed for at least a minimum term within the limits provided by law."

The ABA Standards Relating to Sentencing Alternatives and Procedures, §2.1, state:

"(b) The sentencing court should be provided in all cases with a wide range of alternatives, with gradations of supervisory, supportive and custodial facilities at its disposal so as to permit a sentence appropriate for each individual case.

"(c) The legislature should not specify a mandatory sentence for any sentencing category or for any particular offense."

However, these standards are merely an expression of the consensus of opinion of a committee of the American Bar Association, approved by its house of delegates, and there is no suggestion in either the standards or the commentary that mandatory sentences are constitutionally impermissible. This court has not addressed the question directly.

The question of what constitutes cruel and unusual punishment as that term is used in state and federal constitutions has been examined in many jurisdictions. In the case of *Weems v. United States,* 217 U.S. 349, 54 L.Ed. 793, 30 S.Ct. 544, the

United States Supreme Court held that said term not only prohibits methods of punishment which are inhuman and barbarous but also terms of sentences which are so out of proportion to the nature of the crime that they shock the general conscience in light of concepts of elemental decency. In *Furman v. Georgia,* 408 U.S. 238, 33 L.Ed.2d 346, 92 S.Ct. 2726, reh. den. 409 U.S. 902, 34 L.Ed.2d 163, 93 S.Ct. 89, the unacceptability of a punishment to society was a factor considered in determining whether the punishment was cruel and unusual. It is apparent after reading *Furman* that the concept of cruel and unusual punishment is not rigid but acquires meaning from the evolving standards of decency which mark the progress of a maturing society. In *Furman* it was the method of punishment, the taking of a defendant's life, that was being considered. The question must be determined on a case by case basis. If inherent cruelty is not involved in the method of punishment the criteria which have been considered in determining what is cruel and unusual punishment because of the length of the sentence include such things as excessiveness, disproportionality, lack of necessity, unacceptability to society, and arbitrariness of infliction. (Anno: Cruel Punishment—Length of Sentence, 33 A.L.R.3d 335.)

We have found no cases where statutes such as those we now consider have been held constitutionally impermissible *per se* because they require the imposition of a mandatory sentence without right of probation and parole. In the case of *Gallego v. United States,* 276 F.2d 914 (9th Cir. 1960), the court upheld the sentence imposed for unlawful importation of marijuana. Under the code section involved, 26 U.S.C.A. §7237 (d), the defendant was not eligible for probation or suspension of sentence. The court held the statute did not impose a penalty so out of proportion to the crime as to shock a balanced sense of justice:

". . . At worst it merely forbids in this kind of case and for good reason the discretionary granting of special benefits which Congress did not have to permit in the first place." (p. 918.)

See also *United States v. Williams,* 442 F.2d 738 (D.C. Cir. 1970); and *Sperling v. Willingham,* 353 F.2d 6 (7th Cir. 1965), cert. den. 384 U.S. 962, 16 L.Ed.2d 675, 86 S.Ct. 1591.

In *Stewart v. United States,* 325 F.2d 745 (8th Cir. 1964), cert. den. 377 U.S. 937, 12 L.Ed.2d 301, 84 S.Ct. 1344, the court quoted a prior opinion:

".  .  .  'Appellant's contention that deprivation of the parole accorded under 18 U.S.C. §4202 and continued confinement under his sentence constitutes cruel and unusual punishment is without merit. Such confinement is usual punishment. The *discretionary granting of parole is a matter of legislative grace.* The denial of it to certain offenders is within legislative discretion'." (p. 745.)

### The court continued:

"Congress  .  .  .  has [as much] power to vary provisions for administrative alleviating of sentences as to vary provisions for judicial imposing of sentences, between classes of criminal offenses. Cruelty of punishment as related to sentences turns on what the sentence authorizes to be inflicted. What is reasonable punishment on this basis cannot, therefore, be contended to be cruel because it is without privilege of administrative alleviation, or because the privilege of seeking such alleviation is different than as to some other class of offense.

"Other Circuits, where the constitutional contention has been presented, have similarly held that no question of cruel and unusual punishment is involved from the closing of a narcotic sentence to parole privilege. Gallego v. United States, 9 Cir., 276 F.2d 914; Lathem v. United States, 5 Cir., 259 F.2d 393. See also Oliver v. United States, 8 Cir., 290 F.2d 255; Halprin v. United States, 9 Cir., 295 F.2d 458; Witt v. United States, 9 Cir., 287 F.2d 389. As the Ninth Circuit summarized it in Gallego, supra, §7237 (d) 'merely forbids in this kind of case and for good reason the discretionary granting of special benefits which Congress did not have to permit in the first place'. 276 F.2d at 918." (pp. 745-746.)

In *Black v. State,* 509 P.2d 941 (Okla. Crim. 1973), the appellant had been convicted of the unlawful delivery of marijuana. He was sentenced to two years under a statute which provided that "Such sentence shall not be subject to statutory provisions for suspended sentences, deferred sentences or probation." The defendant contended that denial of the possibility of probation constitutes cruel and unusual punishment and violates due process and equal protection of the laws. The court quotes a 5th Cir. case, *Lathem v. United States,* 259 F.2d 393 (5th Cir. 1958):

" 'Probation and parole are a matter of legislative grace. There is no substance to appellant's contention that the power to grant probation and parole invades the power of the judiciary and violates the doctrine of separation of powers.  .  .  .  There is also no merit to the contention that denial of probation for a first offense is cruel and unusual punishment. The punishment, imprisonment, is usual. Ginsberg v. United States, 5 Cir., 1938, 96 F.2d 433.' " (p. 942.)

### In *Cipolla v. State,* 207 Kan. 822, 486 P.2d 1391, we held:

"A sentence of not less than 40 years nor more than 60 years permitted by K.S.A. 21-534 as enhanced by K.S.A. 21-107a, under the circumstances disclosed by the record, is not so disproportionate to the offense and petitioner's past history of crime as to constitute cruel and unusual punishment." (Syl. 3.)

Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity. (*State v. Coutcher,* 198 Kan. 282, 287, 424 P.2d 865; *Cipolla v. State,* supra, pp. 824-25; Anno: Cruel Punishment—Length of Sentence, 33 A.L.R.3d 335.)

In determining whether the length of a sentence offends the constitutional prohibition against cruel punishment three techniques should be considered:

(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

(3) A comparison of the penalty with punishments in other jurisdictions for the same offense.

A mandatory minimum sentence of one year for carrying a firearm without a license was upheld in *Commonwealth v. Jackson,* 344 N.E.2d 166 (Mass. 1976). On the other hand, a mandatory minimum sentence of ten years for a repeat drug violator was held constitutionally impermissible in the case of *In re Foss,* 10 Cal. 3rd 910, 112 Cal. Rptr. 649, 519 P.2d 1073. A minimum mandatory sentence of five years for the first offense conviction of importation of marijuana was upheld in *Gallego v. United States,* supra. Various courts have upheld minimum mandatory sentences of five years for narcotic violations. See cases reviewed in *People v. Weiss,* 358 N.Y.S.2d 267, 270, 78 Misc. 2d 792.

State cases upholding mandatory minimum sentences for narcotics violations are collected in 81 A.L.R.3d at §4, pp. 1198-1200. These include cases from the states of Maine, Oklahoma, Iowa, and Louisiana in which mandatory minimum sentences ranging in severity from two to ten years have been upheld against challenges of cruel and unusual punishment.

In Kansas the penalty for a particular crime is classified according to the legislative concept of the severity of that crime. The classes named in a descending order of their severity are A, B, C, D, and E felonies. Murder in the first degree, with premeditation and malice, is a Class A felony and carries a greater penalty. Murder in the second degree is classified, along with aggravated robbery, kidnapping and aggravated battery of a law enforcement officer, as a Class B felony. We know of no crime more serious in nature which carries a less severe punishment than that assessed in the present case. We have examined the penalties assessed in various other jurisdictions for murder in the second degree. The penalty for such crime in a majority of jurisdictions in this country is as great as the penalty in Kansas, if not greater.

Applying the three pronged test set out above to the facts and circumstances of our present case we hold a five year mandatory minimum sentence without probation and parole privileges for the crime of murder with a firearm cannot be held so cruel or unusual either in its method or its length that it shocks the conscience and offends fundamental notions of human dignity so as to be constitutionally impermissible.

The appellant next contends the five year mandatory minimum sentence without probation or parole privilege denies her equal protection of the law.

It is argued that because the denial of probation and parole privileges in K.S.A. 1977 Supp. 21-4618 and 22-3717(8) is made mandatory for Article 34 crimes in which the defendant used a firearm such is unreasonable and results in unequal treatment. A wife who uses a club or a knife to kill her husband would be subject to probation and parole privileges. It is urged the firearm classification has no rational basis. In addition it is pointed out that these statutes relate only to Article 34 crimes, and a person who commits rape, an Article 35 crime, while using a firearm, could be granted probation and parole privileges.

In *Henry v. Bauder,* 213 Kan. 751, 518 P.2d 362, it is stated:

"Under federal and Kansas equal protection constitutional provisions, a state statute may single out a class of persons for distinctive treatment only if the classification bears a rational relation to the purpose of the legislation.

"The constitutional principle of equal protection does not preclude the state from drawing distinctions between different groups of individuals, but does require that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." (Syl. 1 and 2.)

In *State v. Goodseal,* 220 Kan. 487, 553 P.2d 279, this court upheld the felony murder rule against these same challenges—those of cruel and unusual punishment and denial of both equal protection and due process. The court noted the purpose of the felony murder rule was:

". . . [T]o furnish an added deterrent to the perpetration of felonies which, by their nature or the attendant circumstances, create a foreseeable risk of death. 'The legislature, acting in the exercise of the police power of the state, is empowered to enact measures in furtherance of the public welfare and safety, and its enactments in such areas are not to be judicially curtailed where they reasonably relate to the ends sought to be attained. Classification honestly designed to protect the public from evils which might otherwise arise are to be upheld unless they are unreasonable, arbitrary or oppressive' (*State v. Weathers,* 205 Kan. 329, Syl. para. 1 & 2, 469 P.2d 292). The felony murder rule, designed as it is to protect human life, represents sound public policy, is reasonably related to the end sought to be accomplished and is not constitutionally impermissible." (pp. 493-494.)

A state statute may single out a class of persons for distinctive treatment only if the classification bears a rational relation to the purpose of the legislation and if persons similarly situated with respect to the legitimate purpose of the law receive like treatment. See *State v. Sherk,* 217 Kan. 726, 730, 538 P.2d 1399.

Courts generally have upheld statutes imposing mandatory sentences upon convicted narcotics offenders while prohibiting probation and parole. See Anno: Narcotics Offenses—Mandatory Sentence, 81 A.L.R.3d, §6, pp. 1202-1204. It would seem that deterrence of the use of firearms in the commission of crimes against persons would be an equally legitimate legislative concern.

This court has said it considers the fixing and prescribing of penalties for violating the criminal statutes of this state a legislative function. (*State v. Shaw,* 201 Kan. 248, 250, 440 P.2d 570; *Cipolla v. State,* supra, p. 824.) There has been much public concern over the increased number of crimes where firearms are being used. By singling out the use of a firearm for a mandatory sentence the legislature merely addresses itself to a problem urgently requiring remedial action. The deterrence of the use of guns in committing crimes against persons (Article 34 crimes) is a legitimate governmental interest and the imposition of a mandatory minimum sentence bears a rational relationship to that goal.

See *Commonwealth v. McQuoid,* ___ Mass. ___, 344 N.E.2d 179.

We hold that K.S.A. 1977 Supp. 21-4618 and 22-3717(8), which deny the privileges of probation and parole and require mandatory minimum sentences for all Article 34 crimes in which the defendant used a firearm in the commission of the crime, are not constitutionally impermissible as denying equal protection of the law.

The due process argument of the defendant is not well delineated in her brief. It is largely based upon the equal protection arguments heretofore answered, and upon legislative encroachment upon the judicial function of tailoring the penalty to fit the crime as recognized in K.S.A. 21-4601, *supra.*

At the outset it should be noted that although these statutes deny probation and parole powers they do not have the effect of taking away all judicial discretion in fixing the sentence to be imposed. The statutory penalty for murder in the second degree appears in K.S.A. 21-4501(*b*) as follows:

"Class B, the sentence for which shall be an indeterminate term of imprisonment, the minimum of which shall be fixed by the court at not less than five (5) years nor more than fifteen (15) years and the maximum of which shall be life;"

Under this legislative provision the sentencing court in its discretion may fix the minimum term of imprisonment at not less than five (5) years nor more than fifteen (15) years. In the present case the defendant received a minimum sentence of five (5) years, the least possible under the statute. It cannot be said that the sentencing court had no discretion in imposing sentence. A fifteen (15) year minimum sentence would have been possible.

Although the separation of powers doctrine is fundamental to our form of government and must be maintained to its full extent, the exact line between judicial and executive or legislative powers has never been delineated with precision. See *State, ex rel., v. Fadely,* 180 Kan. 652, 308 P.2d 537.

In *State v. Motley,* 546 S.W.2d 435 (Mo. App. 1976), the Missouri court rejected the position advanced by the defendant that a court has inherent power to grant or deny a convicted offender probation on consideration of mitigating circumstances, and that to restrict this power by statute would constitute an impermissible legislative usurpation of the court's prerogative. See also *Black v. State,* supra, and *State v. Boisvert,* 348 A.2d 7 (1975 Me.).

We hold that in light of the Kansas sentencing statute, K.S.A. 21-4501(*b*), the provisions of K.S.A. 1977 Supp. 21-4618 and 22-3717(8) denying probation and parole privileges to a defendant convicted of an Article 34 crime in which the defendant used a firearm in the commission of the crime of murder in the second degree are not such a restriction on the judicial power of the sentencing judge as would constitute an impermissible legislative usurpation of the court's prerogatives.

We now turn to the remaining points raised by appellant. The appellant argues a new trial should have been granted because of newly discovered evidence. The evidence referred to as newly discovered bears on a belated claim of insanity first urged on the motion for new trial. The claim is based upon emotional outbursts of the defendant occurring during the trial. The granting of a new trial on the grounds of newly discovered evidence rests largely in the discretion of the trial court. (*State v. Johnson,* 222 Kan. 465, 471, 565 P.2d 993.) We have examined the record and find no abuse of discretion in denying a new trial.

Appellant's point five relating to insufficiency of an instruction on self-defense was neither briefed nor argued and is declared abandoned.

Appellant contends the court erred in failing to give a requested instruction and in giving various instructions alleged to have been confusing to the jury. We have carefully examined these contentions. The instruction requested by appellant was adequately covered in the other instructions given by the court. The burden of proof instruction to which appellant now objects was properly given as suggested in PIK Criminal 52.02. The elements instruction to which appellant now objects covered the crime of second degree murder and followed the form suggested in PIK Criminal 56.03. No error in the instructions has been shown.

The appellant argues that the court erroneously admitted a statement made by her to a police officer immediately after the homicide.

It is the duty of the trial court, before admitting a purported confession into evidence, to conduct a proceeding separate and apart from the jury to determine from the evidence as a preliminary matter whether the confession was freely and voluntarily made. This decision must be based upon a consideration of the

totality of the circumstances. If the confession was the product of a rational intellect and a free will it is properly admissible in evidence. (*State v. Wilson,* 220 Kan. 341, Syl. 7 and 8, 552 P.2d 931.) The trial court's determination will be upheld if supported by substantial competent evidence. (*State v. Creekmore,* 208 Kan. 933, 495 P.2d 96.)

The trial court conducted a *Jackson v. Denno* hearing in this case and determined the statement was admissible. Officer Williams testified the defendant was crying off and on but had no difficulty in talking, and spoke in sentences. He had stated she was in hysterics at the time he advised her of her rights. She appeared to understand those rights. She was crying, her voice was "excited" when she answered his questions. She was still that way when he was questioning her, though she calmed down as he talked to her. She was not screaming but she was crying and did not seem to have complete control of herself. She told him she understood her rights.

This court quoted from 2 Wharton's Criminal Evidence, §386 (12th ed.), in *State v. Brunner,* 211 Kan. 596, 507 P.2d 233:

" 'Evidence tending to establish that a confesser was ill or in a hysterical condition, and therefore not in full possession of his faculties at the time he confessed his guilt, does not affect the admissibility of the confession, but bears on the weight and effect to be given the confession.' (pp. 119-20.)" (p. 602.)

Here the court found there was no coercion or duress, no threats, that she was capable of understanding, and the statement had been made voluntarily. This finding is supported by the record.

The final point concerns separation of witnesses. The statute providing for separation of witnesses reads:

"During the examination of any witnesses or when the defendant is making a statement or testifying the magistrate may, and on the request of the defendant or state shall, exclude all other witnesses. He may also cause the witnesses to be kept separate and to be prevented from communicating with each other until all are examined." (K.S.A. 22-2903.)

The request to sequester witnesses was made after the trial of the case had begun. Following *voir dire,* the court conducted a *Jackson v. Denno* hearing outside the jury's presence to determine the admissibility of the statements made by the defendant to Officer Williams and Detective Stokes. Defendant moved to sequester witnesses. The trial judge upheld it as to one witness,

Mrs. Grason, but he allowed Detective Stokes to remain while Officer Williams testified.

Defendant acknowledges the holding in *State v. Ralls,* 213 Kan. 249, 515 P.2d 1205, but argues the request for sequestration occurred during a hearing *in camera,* was preliminary to the actual trial of the case, and on request it became mandatory under the statute that all witnesses be separated.

In *State v. Ralls,* supra, the court held:

"The mandatory provisions of K.S.A. 1972 Supp. 22-2903 deal with appearances before a magistrate which lead up to and include the preliminary examination. They do not apply to a criminal trial.

"The exclusion or sequestration of witnesses during a criminal trial is a matter not of right but of discretion on the part of the trial court." (Syl. 5 and 6.)

In *State v. McVeigh,* 213 Kan. 432, 516 P.2d 918, the court held:

". . . The mandatory features of the statute apply only to the preliminary phases of a prosecution leading up to and including the preliminary examination, not to the criminal trial itself. . . ." (p. 436.)

With unification of the trial courts in Kansas the use of the word magistrate in K.S.A. 22-2903 creates some question as to the proper application of the mandatory features of the statute. In Sedgwick County, for instance, all judges in the unified trial court are either district judges or associate district judges and they may sit at both the preliminary hearing and the trial. Whatever may have been the legislative intent in making sequestration mandatory on request when testifying before a magistrate we adhere to our previous construction of this statute as declared in *Ralls* and *McVeigh.* The mandatory provisions for separation of witnesses in K.S.A. 22-2903 apply to preliminary hearings and until such time as the accused is bound over for trial; thereafter the exclusion or sequestration of the witnesses is not a matter of right but lies in the sound discretion of the trial court under the general rule recognized in *State v. Theus,* 207 Kan. 571, Syl. 4, 485 P.2d 1327, and *State v. Owens & Carlisle,* 210 Kan. 628, 629, 504 P.2d 249. In the absence of any showing of prejudice to the defendant we cannot find any abuse of discretion by the trial court.

The judgment is affirmed.