NOT DESIGNATED FOR PUBLICATION

No. 114,900

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANDREW ROBERT WIELAND,
*Appellant*.


MEMORANDUM OPINION

Appeal from Miami District Court; AMY L. HARTH, judge. Opinion filed February 17, 2017. Affirmed.

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant.

*Jason A. Oropeza*, assistant county attorney, *Elizabeth Sweeney-Reeder*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BUSER, P.J., ATCHESON and POWELL, JJ.


*Per Curiam*: Defendant Andrew Robert Wieland pleaded guilty in Miami County District Court to two counts of attempted sexual exploitation of a child after law enforcement officers found child pornography on his cell phone and on a computer he had owned. He has challenged that part of his sentence placing him on lifetime postrelease supervision as unconstitutionally cruel and unusual punishment. We find the district court correctly rejected the challenge and affirm Wieland's judgment of conviction, including the sentence.

1

The pertinent facts may be outlined briefly. The crimes came to light in early 2013 when a man bought a used computer Wieland had owned from a Johnson County pawnshop. After discovering child pornography on the computer, the man turned the computer over to law enforcement authorities. They found 168 images and 19 videos of child pornography on the computer and were able to trace the files and their content to Wieland. After Wieland was arrested, the officers seized his cell phone, and their search of it uncovered 242 images of child pornography.

Wieland was charged in Miami County District Court and worked out a plea arrangement with the prosecutor. As we have said, Wieland pleaded guilty to two counts of attempted sexual exploitation of a child, a severity level 7 person felony violation of K.S.A. 2012 Supp. 21-5510(a)(2). See K.S.A. 2012 Supp. 21-5301(c)(1) (attempted crime scored two severity levels below completed crime). The district court imposed consecutive sentences of 11 and 19 months on the charges, yielding a prison term of 30 months to be followed by lifetime postrelease supervision.

In the district court, Wieland argued that lifetime postrelease supervision violated the prohibitions on cruel or unusual punishment in § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution as applied to him and as a categorical form of punishment for his crimes. The prosecutor and Wieland's lawyer presented argument—but no evidence—to the district court on the constitutionality of the sentence. The district court denied Wieland's challenge and in conformity with the mandatory language of K.S.A. 2012 Supp. 22-3717(d)(1)(G) included lifetime postrelease supervision as a component of Wieland's sentence.

Wieland has appealed and reprises his attack on the constitutionality of lifetime postrelease supervision.

On appeal, Wieland's constitutional challenge technically presents four issues: (1) whether lifetime postrelease supervision as applied in this case violates the prohibition on "cruel or unusual punishment" in the Kansas Constitution; (2) whether as applied in this case, it violates the prohibition on "cruel and unusual punishment" in the Eighth Amendment; (3) whether it is unconstitutional under the Kansas Constitution as a form of punishment for a category or class of defendants or crimes relevant here; and (4) whether it is similarly unconstitutional under the Eighth Amendment. For analytical purposes, the as-applied challenges are functionally the same under the state and federal constitutions. The categorical challenges are also analytically the same as each other, although they differ from the as-applied challenges. The constitutional limitations on punishment in § 9 and the Eighth Amendment are worded slightly differently. The former is phrased in the disjunctive and the latter in the conjunctive. The Kansas Supreme Court, however, has never interpreted them to impose substantively different prohibitions. See *State v. Kleypas*, 305 Kan. 224, 339, 382 P.3d 373 (2016).

*As-Applied Challenges*

In reviewing the district court's ruling on an as-applied challenge to the constitutionality of a sentence, we apply the well-recognized bifurcated standard that accords strong deference to the district court's factual findings supported by substantial evidence but reserves to us unrestricted consideration of the legal conclusions resting on those findings. See *State v. Cameron*, 294 Kan. 884, 888-89, 281 P.3d 143 (2012). We do not discern in the record conflicting evidence or other relevant factual disputes. What we have are questions of law. See *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010) (appellate court exercises unlimited review over question of law); *State v. Bennett*, 51 Kan. App. 2d 356, 361, 347 P.3d 229 (when material facts undisputed, issue presents question of law), *rev. denied* 303 Kan. 1079 (2015); *Estate of Belden v. Brown County*,

46 Kan. App. 2d 247, 258-59, 261 P.3d 943 (2011) (legal effect of undisputed facts question of law).

The touchstone in assessing whether a punishment, as applied to a given defendant, violates § 9 is gross disproportionality between the character of the punishment on the one hand and the particular circumstances of both the crime and the convicted criminal on the other. In *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978), the Kansas Supreme Court, thus, construed § 9 to prohibit "[p]unishment . . . if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." That remains the test. *State v. Swint*, 302 Kan. 326, 341-42, 352 P.3d 1014 (2015).

The *Freeman* court identified three components of the analysis for unconstitutional disproportionality. The first factor examines "the nature of the offense and the character of the offender . . . with particular regard to the degree of danger present to society." 223 Kan. at 367. The examination should take into account the "facts of the crime" and "violent or nonviolent nature of the offense" along with "the extent of [the defendant's] culpability for" any resulting injuries and the way the punishment serves recognized "penological purposes." 223 Kan. at 367. The second factor entails comparison of the punishment with sentences for more serious offenses in Kansas. 223 Kan. at 367. If more serious crimes were punished less harshly, then the challenged punishment would be constitutionally "suspect." 223 Kan. at 367. The final factor requires comparison of the punishment to sentences in other jurisdictions for the same offense. 223 Kan. at 367. The "*Freeman* factors" remain the guiding lights in analyzing an as-applied challenge to a sentence. See *Swint*, 302 Kan. at 342.

Postrelease supervision imposes significant restrictions on a convicted defendant's liberty. The defendant may not freely travel and must obtain advance approval for many trips from a supervising parole officer. The defendant and his or her home are subject to

4

warrantless searches without probable cause. The defendant must report as directed by his or her assigned parole officer. And he or she may not drink alcoholic beverages without permission from a parole officer. There are other restrictions and conditions. See *State v. Dull*, 302 Kan. 32, 53-55, 351 P.3d 641 (2015) (listing the terms and conditions of postrelease supervisions), *cert. denied* 136 S. Ct. 1364 (2016). Most defendants must complete a term of postrelease supervision between 12 and 36 months upon their release from prison. A lifetime term, however, is just that—the rest of the defendant's life. There is no provision for conditional or early release. 302 Kan. at 55. Although those lifetime constraints are not as onerous as incarceration, the court recently described them as "a severe sanction." 302 Kan. at 53.

In addition, if a defendant is convicted of a misdemeanor or felony while on postrelease supervision, the prisoner review board may order him or her returned to prison for a term not to exceed the remainder of the supervision period. K.S.A. 77-5217(c). For someone on lifetime postrelease supervision that could be the rest of his or her life. Depending upon the circumstances, that could be an exceptionally draconian sanction.

Under the first *Freeman* factor, we must assess the character of that punishment— its degradation of the defendant's liberty coupled with the duration of that degradation— against the nature of the crimes and the defendant's background. Although Wieland was convicted of attempted possession of child pornography, the charge plainly appears to have been a legal fiction for purposes of the plea agreement. Such an arrangement is proper when the defendant receives a benefit as a result. See *McPherson v. State*, 38 Kan. App. 2d 276, 285, 163 P.3d 1257 (2007); *State v. Snyder*, No. 109,646, 2014 WL 802272, at *3 (Kan. App. 2014) (unpublished opinion) (Atcheson, J., concurring). But Wieland actually possessed a large amount of child pornography he acquired over a period of time and stored on two devices. In analyzing the first *Freeman* factor, we are supposed to

5

consider the factual circumstances of the criminal conduct. So we are not limited to the disembodied elements of the crime of conviction.

In debating the constitutionality of lifetime postrelease supervision for Wieland at his sentencing hearing, both lawyers tacitly acknowledged he actually possessed child pornography and premised their respective positions on that acknowledgment. But we have little information about the nature of the child pornography Wieland acquired. Everybody agrees he did not produce or manufacture child pornography. Wieland purchased at least some of the materials from commercial Internet sites. According to the prosecutor's undisputed representation to the district court, the children depicted were of varying ages and included some girls probably as young as 6 or 7 years old. Apparently relying on the forensic examiner's report about the images found on the computer and telephone, the prosecutor told the district court that most of the child pornography showed girls partially or fully undressed or wearing provocative undergarments. But some of the images showed the subjects engaging in lesbian sex, masturbation, bondage, or sexual intercourse with adult men. The child pornography was interspersed with pornographic images of adults. Nothing suggested Wieland redistributed any of the pornography to other people.

At the time of sentencing, Wieland was 31 years old. He already had a felony theft conviction when he obtained the child pornography and apparently was on pretrial release for at least one more felony theft charge. Much of his lawyer's argument focused on Wieland's military service. Wieland served in the Army from 2008 to 2013 with tours of duty in Iraq and Afghanistan. According to the lawyer, Wieland has been diagnosed as having posttraumatic stress disorder, depression, and anxiety. The lawyer suggested Wieland may have acquired some of the child pornography while he was on military deployment. Given those circumstances, the lawyer contended a sentence including lifetime postrelease supervision would be "unconscionable." The lawyer also outlined the

restrictions that accompany lifetime postrelease supervision and the potentially harsh consequences for any criminal conviction, even a comparatively minor property offense.

Neither side called any witnesses during the sentencing hearing. Nor did the district court receive by agreement reports from any expert witnesses. We have no mental health evaluation of Wieland suggesting some connection between his military service or his diagnosed illnesses and his possession of child pornography. We, similarly, have no information about the likelihood Wieland might reoffend by seeking out more child pornography upon his release from prison and whether postrelease supervision entails the sort of monitoring and restrictions that might inhibit him from reoffending.

We choose not to belabor our discussion of the first *Freeman* factor and conclude the circumstances here do not suggest so gross a disproportionality that the legislative intent and purpose in criminalizing and punishing the possession of child pornography through lifetime postrelease supervision can be overridden as unconstitutionally cruel and unusual. Those cases are necessarily rare and must display a disregard for fundamental fairness of such gravity as to be intolerable to a civilized society. This is not one of those cases.

Wieland is an adult, not a juvenile offender. And he committed other felonies before and during his commission of these crimes. Although Wieland suffers from diagnosed mental illnesses that presumably are related to his military service, nothing in the record suggests those conditions made him prone to seeking out child pornography or have somehow rendered lifetime postrelease supervision especially cruel and unusual for him. The quantity of child pornography he obtained indicates more than an inadvertent acquisition or "experimental" interest. The images included the rape of underage girls—the sort of core exploitation of children the legislature meant to punish in K.S.A. 2012 Supp. 21-5510. Finally, Wieland was a commercial consumer of child pornography in that he purchased at least some of the images, thereby contributing to the profitability of

7

those materials and encouraging their continued production. Although Wieland's contribution to the market for child pornography was itself infinitesimal, as his lawyer pointed out, that doesn't really mitigate his conduct. Virtually every purchaser of child pornography could minimize his or her criminal behavior on that basis.

In short, we cannot find the sort of complete lack of connection between the challenged punishment and the factual circumstances of this particular criminal episode and this particular defendant necessary to establish a constitutionally suspect disproportionality. Accordingly, the first *Freeman* factor cuts against Wieland.

The Kansas Supreme Court has already considered the second *Freeman* factor in comparing the punitive effects of lifetime postrelease supervision to punishments imposed for various serious crimes that carry finite terms of postrelease supervision of up to 36 months. See *State v. Mossman*, 294 Kan. 901, 913, 281 P.3d 153 (2012) (considering second-degree murder for comparison); *Cameron*, 294 Kan. at 892-93 (same). The court found no cause for constitutional concern in *Mossman* or *Cameron*, especially taking into account the longer periods of incarceration imposed for the serious crimes used for comparison. In *Mossman*, a man temporarily resided with a coworker and had a continuing sexual relationship with his host's 15-year-old stepdaughter. The teenager willingly participated in the relationship, although she could not legally consent because of her age. Mossman received a presumptive sentence of incarceration followed by lifetime postrelease supervision. That conclusion similarly governs here on the second factor. Wieland received a controlling sentence of 30 months in prison on *two* counts of attempted sexual exploitation of a child. Had he been convicted of intentional second-degree murder, he would have faced a presumptive guidelines sentence calling for a term of imprisonment between 221 and 246 months followed by 36 months of postrelease supervision. Wieland's crime entailed trading in child pornography that included images of young children being violently sexually abused by adults.

8

Factual comparisons among the crimes in *Mossman*, here, and a hypothetical second-degree murder for purposes of assessing the constitutionality of the punishments are necessarily somewhat abstract, since they all differ materially in their particulars. Nonetheless, as we have said, the result in *Mossman* guides the assessment of the second *Freeman* factor here and similarly suggests the factor weighs against a constitutional violation.

As to the third *Freeman* factor, Wieland has surveyed other jurisdictions and represents that five other states impose some manner of lifetime postrelease supervision on defendants convicted of offenses involving child pornography. But, he contends, only Kansas imposes irrevocable lifetime postrelease supervision for the attempted possession of child pornography. The State does not dispute Wieland's general assessment. Wieland identifies Louisiana, Montana, Nebraska, Nevada, and New Jersey for comparison. He points out Louisiana, Nevada, and New Jersey permit convicted sex offenders to petition for release from postrelease supervision. La. Rev. Stat. Ann. § 15:561.2 (2012) (requiring lifetime postrelease supervision of offender if victim was under 13 years old and allowing offender to petition court for termination of supervision); N.J. Stat. Ann. § 2C:43-6.4(c) (2016) (allowing defendant to petition the court for release from lifetime postrelease supervision); Nev. Rev. Stat. § 176.0931(3) (2015) (allowing the defendant to petition for release from lifetime supervision, and stating that the petition "shall" be granted if certain requirements are fulfilled). Montana imposes mandatory lifetime postrelease supervision for possession of child pornography but not for an attempt to possess. Mont. Code Ann. § 45-5-625(1)(e) (2015) (classifying knowingly possessing child pornography as sexual abuse of children). And Nebraska imposes mandatory lifetime postrelease supervision on defendants convicted of possessing child pornography with the intent to redistribute it in some fashion. Neb. Rev. Stat. § 83-174.03(1)(a) (2014) (imposing lifetime postrelease supervision of defendants convicted of attempting to possess or possessing child pornography under Neb. Rev. Stat. § 29-4003[1][a][i][I], [N]) (2016); § 28-1463.05 (criminalizing knowingly possessing child pornograph with the "intent to rent, sell,

9

deliver, distribute, trade, or provide" it to another); § 28-1463.03 (criminalizing many aspects of transferring and creating child pornography but not simple possession). We have not surveyed the remaining states.

Based on the argument the parties have framed, Kansas appears to impose the most severe postrelease supervision for attempted possession of child pornography, although the comparison is essentially based on the duration of supervision rather than the attendant restrictions or the consequences for a violation. But even at that, Kansas isn't a complete outlier. In any state-by-state comparison, some state tops the list and some state is at the bottom. When it comes to criminal sentences, that doesn't mean the state with the harshest punishment necessarily has committed a constitutional violation. Or here, since that appears to be Kansas, the punishment runs afoul of the third *Freeman* factor. Even if we assume the third factor favors Wieland, his claim under § 9 fails. The first and second factors are far more significant in determining whether the Kansas Constitution has been violated, since they deal with the circumstances of the case and the intent of the Kansas Legislature in fixing criminal penalties. How Kansas fares against other states and their legislative approaches to sentencing criminals presents a less compelling criterion for establishing a violation of § 9.

Accordingly, we reject Wieland's argument that his sentence violates the Kansas Constitution's prohibition on cruel or unusual punishment. The conclusion, as a practical matter, also forecloses Wieland's as-applied challenge under the Eighth Amendment, since the standards mirror those in *Freeman*, although they are applied slightly differently. What amounts to the first *Freeman* factor must strongly indicate a constitutionally disproportionate sentence before a court undertakes the intrastate comparison of punishments for other crimes and the interstate comparison of punishments for the same offense. *Graham v. Florida*, 560 U.S. 48, 59-61, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). Wieland's federal claim technically fails because he cannot show a gross disproportionality of lifetime postrelease supervision as punishment

10

based on his individual circumstances and the facts underlying his conviction. Even if we extended our review to the intrastate and interstate sentencing comparisons, the federal claim would still fail for the reasons we have already explained.

*Categorical Challenges*

In making a categorical challenge under the Eighth Amendment, a criminal defendant argues a punishment to be so severe for the offense or for a broad class of offenders as to be constitutionally unacceptable in every instance. *Graham*, 560 U.S. at 60-61; *State v. Williams*, 298 Kan. 1075, 1086, 319 P.3d 528 (2014); *Mossman*, 294 Kan. at 927-28. That is, the sentence is manifestly excessive for the criminal wrong without regard to the particular facts or circumstances of the defendant's case. In assessing a categorical challenge, the courts consider whether a "national consensus" would preclude the punishment and whether the punishment fails to comport with a reasoned judicial application of the Eighth Amendment. *Graham*, 560 U.S. at 61; *Mossman*, 294 Kan. at 929. We presume a categorical challenge may be brought under § 9 of the Kansas Constitution Bill of Rights and further presume the criteria and method of analysis would be the same as for an Eighth Amendment challenge. See *Kleypas*, 305 Kan. at 339.

A categorical challenge presents a question of law and is reviewed on appeal without deference to the district court's ruling. *Dull*, 302 Kan. at 40.

In *Williams*, the court rejected a categorical Eighth Amendment challenge to lifetime postrelease supervision as part of a sentence for possession of child pornography. 298 Kan. at 1090. Obviously, that determination informs our decision here. We are left to examine whether an attempted possession of child pornography may be meaningfully distinguished from the completed crime, so as to warrant a different Eighth Amendment outcome.

11

Under Kansas law, an attempt entails "an overt act" by a person harboring the intent to commit a particular crime but who fails in its commission or "is prevented or intercepted" in carrying out the crime. K.S.A. 2015 Supp. 21-5301(a). There are a number of ways a person might fail in acquiring child pornography, leading to a charge for attempted possession. Law enforcement officers might intercede and stop the transaction after the defendant has requested the offending materials but before they have been delivered. Or the materials might actually depict youthful looking adults falsely represented to be less than 18 years old—a form of legal impossibility punishable under the Kansas attempt statute. See K.S.A. 2015 Supp. 21-5301(b). In a categorical challenge, we are unconcerned about the particular reason the crime may have failed in a given defendant's case and ask whether the challenged punishment would be constitutionally permissible for some form of attempt. The required framing of the issue inures to Wieland's benefit. If we were to consider the factual circumstances of his case, the attempt would be revealed as an agreed-upon legal fiction to facilitate a plea, as we have said. Arguably, *Williams* should control if the specific facts here defined the categorical challenge.

Similarly, in reviewing a categorical challenge, we do not consider the particular type of child pornography the defendant sought to acquire. While all child pornography is deleterious, some is distinctly more pernicious. Again, a categorical challenge would require a judicial determination that the disputed punishment be constitutionally cruel and unusual even for the most pernicious child pornography. Especially in light of *Williams*, we cannot take that step.

A defendant who attempts to possess child pornography, by definition, has the requisite bad intent or *mens rea* for the completed crime. So, to that extent, the defendant is indistinguishable from the defendant guilty of the completed offense. Typically, a defendant guilty of only an attempt faces a shorter presumptive period of imprisonment because the harm associated with the completed crime has not come to pass. And our

12

criminal justice system does not punish bad intent unless it is coupled with direct actions prompted by that intent. If the actions fall short of a completed crime, we usually treat the resulting circumstance as less criminally blameworthy and, hence, deserving of a commensurately less severe punishment. That is true even though the failure may be attributable to fortuity—a law enforcement officer just happened by to intercept someone wearing a bandana mask entering a liquor store with pistol in hand—or ineptitude— someone gets caught trying to break into that same liquor store after hours, despite the sign warning of the silent alarm system.

Here, Wieland received the sentencing benefit commonly extended to defendants convicted of attempts in that his presumptive term of imprisonment was shorter than it would have been had he been convicted of the completed crime. Postrelease supervision operates in conjunction with incarceration and serves the same overall penological objectives of retribution, deterrence, incapacitation, and rehabilitation. *Mossman*, 294 Kan. at 912. But postrelease supervision focuses more directly on rehabilitation and deterrence. The required period of postrelease supervision, therefore, links to the nature of the crime and the motive and intent that may have prompted it. In *Williams*, the court determined lifetime postrelease supervision to be constitutionally permissible as a categorical component of punishment for persons convicted of possession of child pornography because as a class they may be at an especially high risk to repeat the offense. 298 Kan. at 1089. In turn, long-term monitoring of the kind imposed through postrelease supervision may inhibit them from reoffending, thereby promoting their own welfare and protecting society. 298 Kan. at 1089.

Assuming the accuracy of those premises, as we must in light of *Williams*, they are equally applicable to defendants convicted of attempted possession of child pornography when viewed as a class. That is, those defendants are equally susceptible to compelling internal and external pressures to again seek out those illicit materials. As we have indicated, nothing in the record in this case suggests otherwise. In turn, Wieland's

13

categorical challenges to lifetime postrelease supervision under the Eighth Amendment and § 9 fail for the same reasons the categorical challenge to the completed offense did in *Williams*.

Finding no constitutional infirmity, we, therefore, affirm the sentence the district court imposed on Wieland.