NOT DESIGNATED FOR PUBLICATION

No. 116,893

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TONY JAY MEYER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Saline District Court; JARED B. JOHNSON, judge. Opinion filed February 9, 2018. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Anna M. Jumpponen*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., BUSER and SCHROEDER, JJ.


PER CURIAM:  "Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978). When determining whether punishment is unconstitutional, courts often use three factors outlined by the court in *Freeman* to guide the constitutionality inquiry.

1

Tony Jay Meyer was sentenced to prison and lifetime postrelease supervision following convictions for aggravated indecent liberties with a child and aggravated sodomy. He appeals, arguing that the district court failed to adequately consider the first *Freeman* factor. However, the record shows that the district court made an in-depth inquiry before sentencing Meyer, appropriately considering the first *Freeman* factor. Accordingly, we affirm.

FACTUAL AND PROCEDURAL HISTORY

In February 2013, 18-year-old Meyer sodomized his 7-year-old foster sister. The State charged him with one count of aggravated criminal sodomy, and later added a single count of aggravated indecent liberties with a child. Both crimes are off-grid person felonies. K.S.A. 2012 Supp. 21-5504(c)(3); K.S.A. 2012 Supp. 21-5506(c)(3).

The State and Meyer entered into a plea agreement. Meyer agreed to plead guilty or no contest to both charges. In exchange, the State agreed to stipulate to a departure to the sentencing grid and to recommend consecutive mitigated sentences from the applicable grid boxes. Meyer ended up pleading no contest to both counts.

Before sentencing, Meyer moved for further departure. He listed his age, his cooperation with the police, and a report from Dr. T.A. Moeller as factors supporting departure. Dr. Moeller evaluated Meyer at the request of Meyer's attorney. Dr. Moeller concluded that Meyer had a low probability of repeat offending, and that incarceration would be counterproductive to his rehabilitation. Dr. Moeller believed that, with appropriate therapy, Meyer could be rehabilitated. Meyer requested a sentence of 75 months' imprisonment.

At sentencing, the State asked the district court to depart to the sentencing grid, but opposed Meyer's motion for further departure. Contrary to the plea agreement, the

2

State also recommended that the district court sentence Meyers to the aggravated sentence in the grid boxes. The district court found that there were substantial and compelling reasons to depart to the sentencing grid from the Jessica's Law sentence, but denied Meyer's request for further departure. The district court judge did "not believe that the State's recommendation for aggravated consecutive sentences [was] appropriate given the totality of the circumstances . . . in this case." The district court sentenced Meyer to 147 months' imprisonment for the aggravated criminal sodomy conviction and a concurrent sentence of 55 months' imprisonment for the aggravated indecent liberties with a child conviction. The district court also imposed lifetime postrelease supervision and lifetime electronic monitoring.

Meyer appealed his sentence, arguing "that the State violated the plea agreement when it recommended the aggravated sentence rather than the mitigated one." *State v. Meyer*, 51 Kan. App. 2d 1066, 1067, 360 P.3d 467 (2015). The Court of Appeals agreed with Meyer, vacated his sentence, and remanded the case for resentencing. 51 Kan. App. 2d at 1072.

At Meyer's resentencing, the State requested mitigated, consecutive sentences of 147 months for the aggravated criminal sodomy conviction and 55 months for the aggravated indecent liberties with a child conviction. Meyer again requested concurrent 75-month sentences. He also asked the court not to impose lifetime postrelease supervision. The district court again departed from the Jessica's Law sentences to the sentencing grid. It imposed consecutive sentences of 147 months for aggravated criminal sodomy and 55 months for aggravated indecent liberties with a child.

In determining whether to impose lifetime postrelease supervision, the district court considered the factors set forth in *Freeman*, 223 Kan. 362, Syl. ¶ 2. In *Freeman*, the Kansas Supreme Court held: "Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for

3

which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." 223 Kan. at 367. The court provided three factors to consider in determining whether the length of a sentence violates the constitutional prohibition against cruel and unusual punishment. 223 Kan. at 367. These are:

> "(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;
>
> "(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and
>
> "(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

In regard to the first factor, the district court concluded that the offense was violent and sexually motivated in nature. This is based on the fact that Meyer took the seven-year-old victim into the laundry room, locked the door, put her on top of the dryer, and anally penetrated her. Although there was disagreement over whether Meyer physically forced the victim into the laundry room, the court said that telling the victim to stay in the laundry room was equivalent. The court also considered the injury caused by the crime. In this case, the victim lost a sense of security in her familial relationships because Meyer was her foster brother. Additionally, after the incident, the victim was removed from the foster home which resulted in her being separated from her biological brother, whom her foster parents had adopted. The district court also thought that Meyer was entirely culpable for his actions, even though Meyer himself had been sexually abused as a child. Finally, the district court reviewed the penological purposes for the

4

imposition of lifetime postrelease and concluded that such a punishment would serve to deter, incapacitate, and rehabilitate.

In regard to the second *Freeman* factor, the district court concluded that the nature of sexual crimes are serious and detrimental enough to victims to warrant lifetime postrelease supervision. The court also noted that imposing lifetime postrelease supervision for such crimes had been approved by the Kansas Court of Appeals and Supreme Court. For the third *Freeman* factor, the district court noted that Kansas takes a more severe approach than most states. But, the court thought that the punishment was not grossly disproportionate to the crime and it was premised on legitimate penological purposes. Based on its analysis of the *Freeman* factors, the district court concluded that sentencing Meyer to lifetime postrelease supervision would not violate his constitutional rights.

Meyer appealed.

ANALYSIS

Meyer argues that the district court erred by failing to fully consider the first *Freeman* factor. Meyer asserts that the district court failed to consider his age and lack of criminal history. He also argues that the district court did not take into consideration Dr. Moeller's conclusions that Meyer had a low probability of reoffending and a strong potential for recovery. Dr. Moeller also concluded that Meyer's attention deficit hyperactivity disorder (ADHD), mood disorder, and childhood sexual abuse contributed to his crime. Meyer asks this court to remand his case with instructions for the district court to give the factor further consideration. Meyer does not challenge the district court's findings on the second and third *Freeman* factors.

Usually, this court employs unlimited review of constitutional challenges. *State v. Mossman*, 294 Kan. 901, 906, 281 P.3d 153 (2012). However, in applying the *Freeman* factors to determine whether a sentence is cruel or unusual, the district court must make both factual and legal determinations. 294 Kan. at 906. In this situation, "an appellate court applies a bifurcated standard of review:  All of the evidence is reviewed, but not reweighed, to determine if there is sufficient support for the district court's factual findings, and the district court's legal conclusions drawn from those facts are reviewed de novo." 294 Kan. at 906.

Meyer is not arguing that the district court's factual findings are unsupported, just that they are incomplete. Nor does Meyer argue that the district court came to the wrong legal conclusion. Although he argues that the district court should reconsider the first *Freeman* factor, he does not explain how reconsideration would result in a different legal conclusion. However, a review of the resentencing hearing shows that the district court considered all appropriate facts, and that the facts supported the court's legal conclusions.

Meyer complains that the district court failed to consider his age, criminal history, and Dr. Moeller's report. But right before analyzing the *Freeman* factors, the district court considered whether there were substantial and compelling reasons to grant Meyer's motion for further durational departure. During this analysis, the court considered Dr. Moeller's report. The district judge thought Dr. Moeller's report lacked a risk assessment that would predict Meyer's likelihood of recidivism. The judge noted a "disconnect between the doctor's ultimate conclusion that [Meyer's] untreated ADHD and other circumstances" caused Meyer's actions. After noting that Meyer's IQ and other testing was within normal range, the judge concluded that "[Meyer] was of the age where he could make age appropriate decisions and he was culpable for his behavior." Directly after this discussion, the court considered the *Freeman* factors. Then, the court said that Meyer was "one hundred percent culpable" for his actions. Based on the district court's statements during its consideration of Meyer's motion for further departure, it is clear that

the district court did take into account Dr. Moeller's report and Meyer's age in determining Meyer's culpability.

The district court also explicitly mentioned Meyer's age during its analysis of the *Freeman* factors. Its analysis began by noting that Meyer was 18 years old at the time of his crimes. The district court also discussed the age disparity between Meyer and his victim. The judge stated that he was concerned with "not just the number of years disparity, but the maturity level of disparity between an 18 year old and a seven year old." This shows that the district judge considered Meyer's age, although perhaps not in the way that Meyer would have liked.

The district court did not explicitly mention Meyer's criminal history score during its analysis of the *Freeman* factors. However, directly after applying the *Freeman* factors and concluding that lifetime postrelease supervision did not violate the Kansas Constitution, the district court considered whether the sentence would violate the Eighth Amendment of the United States Constitution. The court noted that Meyer had a low criminal history score that "would weigh in his favor in this analysis." Although the court did not mention Meyer's criminal history during its analysis of the *Freeman* factors, the court's statement directly following that analysis shows that the court was aware of Meyer's criminal history and that the low criminal history worked in Meyer's favor.

The district court's factual findings support its legal conclusion that lifetime postrelease supervision is not grossly disproportionate to Meyer's crimes. The State compares Meyer's case to that of James Mossman in *Mossman*, 294 Kan. 901. When Mossman was 25, he lived with the family of his 15-year-old victim and engaged in a sexual relationship with her. Mossman pled no contest to aggravated indecent liberties with a child and cocaine possession. Before sentencing, Mossman filed a motion arguing that imposition of lifetime postrelease supervision would constitute cruel or unusual

7

punishment prohibited by the Kansas and United States Constitutions. The district court denied this motion, and Mossman appealed.

On appeal, Mossman made two primary arguments regarding the first *Freeman* factor. First, he argued that his crime was not serious enough to warrant lifetime postrelease supervision because his relationship with the 15 year old was consensual. The Kansas Supreme Court was not convinced by this argument, noting that "Kansas law treats 15-year-old children as minors and recognizes them as deserving of the State's protection and legally incapable of consenting to sexual intercourse." 294 Kan. at 910. An adult, such as Mossman, "is expected to protect the child from the child's poor judgment, not take advantage of that poor judgment." 294 Kan. at 910. Mossman also cited an expert report prepared by Dr. Mitchell Flesher. After assessing Mossman, Dr. Flesher found several factors that weighed in Mossman's favor, such as his lack of criminal history, a low recidivism score, acceptance of responsibility for his actions, and display of remorse. Dr. Flesher recommended that Mossman participate in a sex offender treatment program to address the impulse issues that contributed to the commission of his crime. The Kansas Supreme Court thought that while Dr. Flesher's report could reduce the penological interest in retribution, it "ignor[ed] other legitimate penological goals such as deterrence, incapacitation, and rehabilitation." 294 Kan. at 911. The court thought that penological interests would be best promoted by supervised release. 294 Kan. at 911.

Like Mossman, Meyer presented an expert's opinion that he had a low risk of reoffending and that he would benefit from treatment. Both men also had no criminal history. However, this was not enough for the Kansas Supreme Court to find that lifetime postrelease supervision was grossly disproportionate to the crime in *Mossman.* Likewise, we find that there was sufficient evidence for the district court to conclude that lifetime postrelease supervision was not grossly disproportionate here either.

Meyer asserts that his case is analogous to *State v. Proctor*, No. 104,697, 2013 WL 6726286 (Kan. App. 2013) (unpublished opinion). Proctor pled guilty to one count of aggravated indecent solicitation of a child and two counts of lewd and lascivious behavior. The victim was a 12-year-old boy. Proctor committed the crimes while he was living with the boy's family. At the time of his plea, Proctor was 19 years old and had no criminal history. Proctor's aggravated solicitation sentence fell into a border box on the sentencing grid, which provided for presumptive incarceration between 21 and 34 months. The sentencing statutes allowed first-time offenders convicted of severity level 5 person felonies to receive probation if the district court found that counseling was available and that the public interest would be served with a nonprison punishment. The district court made that finding, and granted Proctor 36 months' probation with an underlying prison sentence of 32 months. Proctor's other convictions were presumptive probation offenses, and Proctor received probation for those. The district court also imposed the statutorily mandated term of lifetime postrelease supervision for the indecent solicitation of a child conviction. 2013 WL 6726286, at *2-3 (citing K.S.A. 2009 Supp. 22-3717[d][1][G], [d][2][F]).

Proctor appealed, arguing that the sentence of lifetime postrelease supervision constituted cruel and unusual punishment as applied to the facts of his case. The Kansas Court of Appeals agreed. It held that, under the facts presented, imposition of lifetime postrelease supervision on Proctor violated the prohibitions against cruel and unusual punishment in the United States and Kansas Constitutions. 2013 WL 6726286, *8. A primary factor in the court's decision was the fact that Proctor could receive life in prison for two crimes that individually permitted probation. The court explained that Proctor's crime of conviction allowed for probation. If Proctor violated that probation, he would be sent to prison and then subject to lifetime postrelease supervision. If Proctor then committed a felony, even a nonperson felony that carried a presumptive probation sentence such as writing a bad check, he would be sent to prison for the remainder of his life. 2013 WL 6726286, *4-5.

9

Meyer's situation is distinguishable from Proctor's. Both of Meyer's offenses were off-grid person felonies. K.S.A. 2012 Supp. 21-5504(c)(3); K.S.A. 2012 Supp. 21-5506(c)(3). Each offense carried a statutory term of imprisonment for life, with a mandatory minimum of 25 years. K.S.A. 2012 Supp. 21-6627(a)(1)(C); K.S.A. 2012 Supp. 21-6627(a)(1)(D). This is vastly different than Proctor's crime of conviction, which allowed the district court to impose probation upon making special findings.

The district court performed an appropriate analysis of the *Freeman* factors, and there was sufficient support for the district court's factual findings. Although Meyer does not directly challenge the district court's legal conclusion, the conclusion is sound. There is no need to remand this case for further reconsideration of the first *Freeman* factor.

Accordingly, the decision of the district court is affirmed.